(No. 81220.—

STAN LIEBER, Appellee, v. THE BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, Appellant.

*Opinion filed May 1, 1997.*

Michael F. Dahlen, of Feirich, Mager, Green & Ryan,

and Shari R. Rhode and Lee Ellen Starkweather, all of Carbondale, for appellant.

Thomas R. Peters and Curtis R. Picou, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether the Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 1994)) requires Southern Illinois University (SIU) to provide the owner of an apartment building approved by the University for freshmen students with a list containing the names and addresses of individuals who had contacted the University about freshman housing. The circuit court held that SIU did not have to give the building's owner access to this information and granted summary judgment in favor of the University. The appellate court reversed and remanded with directions to enter summary judgment against SIU and in favor of the building's owner. 279 Ill. App. 3d 553. We granted SIU's petition for leave to appeal (155 Ill. 2d R. 315) and now affirm the appellate court's judgment.

Summary judgment is proper where

"the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994).

In this case, the record discloses the following facts. SIU requires unmarried freshmen under the age of 21 who do not live with their parents to reside either in a University dormitory on campus or in privately owned off-campus housing approved by the University. Stan Lieber, the plaintiff in this case, owns a University-approved off-campus housing facility known as the Stevenson Arms.

In the past the University supplied Lieber and other owners of approved off-campus housing with information about incoming freshmen so that the owners could contact them directly with information about their respective housing units. They also routinely supplied mailing labels containing names and addresses of incoming students to the Southern Illinoisan, a Carbondale newspaper, and to various religious organizations. In addition, the University honored requests from various state representatives for the names and addresses of SIU students who resided in their legislative districts, and it provided numerous other educational institutions with information about students who had transferred from those institutions to SIU, including social security numbers, academic major, and number of hours of study completed.

In the spring of 1992, SIU sent a letter to the manager of the Stevenson Arms noting that enrollment at the University was declining and that occupancy rates in student housing had dropped, resulting in more competition between the various housing providers. The University cautioned the Stevenson Arms about the need to clear its advertisements and promotions with the University. It also placed the facility on notice that it would no longer include brochures on approved off-campus housing for freshmen in the materials mailed out by the University's Central Housing Office. According to the University, owners of approved off-campus housing would be required to rely on their own resources for advertising and publicity.

Subsequent to this correspondence, the University became uncooperative in releasing the names and addresses of incoming students to the Stevenson Arms. As a result, Lieber, the owner, filed formal requests for the information in accordance with the Freedom of Information Act. The requests were filed in October and

November of 1992. The University granted Lieber's request with respect to freshmen enrolled in the fall of 1992. In addition, according to answers to interrogatories given on behalf of SIU by its vice president of student affairs, the University provided the manager of the Stevenson Arms with lists of freshmen who had been accepted for the following academic year.

In January of 1993, SIU officially discontinued the practice of providing the names and addresses of accepted students to owners of approved off-campus housing, citing "the need to develop a consistent approach on providing information for all owners and assure compliance with the law and University policy on release of student information." Instead of releasing information about the prospective students to the private owners, SIU advised that it would send information supplied by the private owners to the incoming students, and to any others who requested information about freshman housing, along with information about the on-campus housing opportunities provided by the University itself.

Following the change in policy, Lieber was given at least one additional list of freshmen admitted for the 1993-94 academic year. After the University's vice president of student affairs discovered this, he directed that the new policy be implemented and that address labels not be given to any landlords of approved off-campus housing for freshmen. Employees of the Stevenson Arms subsequently provided the University with materials on their facility, but the University returned a substantial amount of the materials without including them in its mailings, contrary to the representations it had made.

Lieber responded by filing another Freedom of Information Act request to obtain address list information for individuals who had inquired about freshman housing for the coming academic year, including inquiries

from accepted freshmen, so he could do the mailings himself, as he had before. By letter dated April 15, 1993, the president of SIU denied Lieber's request, claiming (1) that the Freedom of Information Act does not require release of information to be used for furthering a commercial enterprise and (2) that address list information for accepted freshmen is exempt from disclosure because the release of student information is restricted by federal law. Although the letter did not cite the pertinent statutory provision, the president's reference to federal law was clearly meant to invoke section 7(1)(a) of the Act (5 ILCS 140/7(1)(a) (West 1994)), which exempts from inspection and copying "[i]nformation specifically prohibited from disclosure by federal or State law."

Lieber sought judicial review of the president's decision by filing suit for injunctive relief in the circuit court of Jackson County pursuant to section 11 of the Act (5 ILCS 140/11 (West 1994)). In the circuit court, SIU abandoned its claim that federal law barred disclosure of the names and addresses of admitted freshmen who had inquired about housing. Instead, it challenged Lieber's lawsuit on the grounds that such information is exempt from disclosure under a separate provision, section 7(1)(b) (5 ILCS 140/7(1)(b) (West 1994)), because it constitutes personal information maintained with respect to students or other individuals receiving educational services from a public body.[1] SIU also contended that Lieber is not entitled to relief under the statute because he is seeking the information for commercial

---

[1] We have found no indication in the record or briefs that Lieber ever objected to the University's reliance on a different exemption than the one set forth in its notice denying his request. The issue of whether a public body should be able to change the justification for its decision after the fact, as SIU did here, has therefore been waived and will not be considered in this case.

purposes, namely, to obtain tenants for his building, and section 1 of the law specifically states that it is not intended to be used "for the purpose of furthering a commercial enterprise." 5 ILCS 140/1 (West 1994).

Following various proceedings not relevant here, the circuit court granted summary judgment in favor of SIU. It did not address the applicability of section 7(1)(b) (5 ILCS 140/7(1)(b) (West 1994)), but agreed with SIU's contention that Lieber is not entitled to relief under the Act because he is seeking the requested information for purely commercial purposes.

As noted at the outset of this opinion, the appellate court reversed and remanded with directions that summary judgment be entered in favor of Lieber. 279 Ill. App. 3d 553. The court held that Lieber's purpose in requesting the information did not automatically defeat his claim and that the trial court erred in requiring Lieber to explain his purpose in requesting the information and in denying his request on the basis that the information would further his commercial enterprise. The appellate court further held that the University had failed to meet its burden of showing that the information requested by Lieber was exempt under section 7 of the Act.

This court granted the University's petition for leave to appeal (155 Ill. 2d R. 315), and the matter is now before us for review. In conducting our analysis, we are guided by the principle that under the Freedom of Information Act, public records are presumed to be open and accessible. The Act does create exceptions to disclosure, but those exceptions are to be read narrowly. *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989).

When a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions applies. *American*

*Federation of State, County & Municipal Employees v. County of Cook*, 136 Ill. 2d 334, 341 (1990). The exemptions are set forth in section 7 of the Act (5 ILCS 140/7 (West 1994)). If the public body seeks to invoke one of the exemptions in section 7 as grounds for refusing disclosure, it is required to give written notice specifying the particular exemption claimed to authorize the denial. 5 ILCS 140/9(b) (West 1994); *American Federation of State, County & Municipal Employees*, 136 Ill. 2d at 341. If the requesting party subsequently challenges the denial in circuit court (5 ILCS 140/11 (West 1994)), the public body has the burden of proving that the records in question fall within the exemption it has claimed. See *Carbondale Convention Center, Inc. v. City of Carbondale*, 245 Ill. App. 3d 474, 476-77 (1993).

Most of the exemptions set forth in section 7 of the Act (5 ILCS 140/7 (West 1994)) are specific, identifying the particular public records that are not subject to disclosure. Where the public body claims that a requested document falls within one of these specifically enumerated categories and is able to prove that claim, no further inquiry by the court is necessary. The documents "shall be exempt from inspection and copying." 5 ILCS 140/7(1) (West 1994). This *per se* rule applies to the specific exemptions set forth in the subsections of section 7(1)(b) of the Act (5 ILCS 140/7(1)(b) (West 1994)), which pertains to "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy," just as it does to the other exemptions in section 7. See *Healey v. Teachers Retirement System*, 200 Ill. App. 3d 240, 243 (1990).

The appellate court here took a different view, holding that even if information falls within a specific exemption, the court must still make an independent determination as to whether disclosure would amount to "a clearly unwarranted invasion of personal privacy,"

taking into account (1) the plaintiff's interest in disclosure, (2) the public interest in disclosure, (3) the degree of invasion of personal privacy, and (4) the availability of alternative means of obtaining the requested information. 279 Ill. App. 3d at 561. Although this approach is not unprecedented (see, *e.g., Margolis v. Director of the Department of Revenue*, 180 Ill. App. 3d 1084, 1089 (1989); *City of Monmouth v. Galesburg Printing & Publishing Co.*, 144 Ill. App. 3d 224, 226 (1986)), we agree with the court in *Healey v. Teachers Retirement System*, 200 Ill. App. 3d at 244-45, that it cannot be squared with the clear and unambiguous language of the statute.

This is not to say that consideration of the various factors identified by the appellate court is never appropriate in determining whether information is exempt under section 7(1)(b) of the Act. That section does not purport to be an exclusive list of information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy. To the contrary, the section expressly provides that it is not limited to the items enumerated. Where a public body asserts an exemption for information that is not specifically included on the list and therefore not exempt *per se*, the court must evaluate the particular information on a case-by-case basis.

In the matter before us, the University claimed that the information requested by Lieber in this case did fall within one of section 7(1)(b)'s specific exemptions. The appellate court was therefore wrong to make an individualized assessment of whether disclosure of the information would invade anyone's personal privacy. If the information consisted of personal information maintained with respect to students or other individuals receiving educational services and was therefore covered by the express terms of section 7(1)(b)(i), it would, by

definition, constitute "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy" (5 ILCS 140/7(1)(b) (West 1994)) and be automatically exempt from disclosure.

Despite the appellate court's analytical error, we agree with its conclusion that section 7(1)(b)(i) does not apply to the information requested by Lieber here. As previously indicated, that section applies to personal information maintained with respect to students or other individuals receiving educational services from a public body. Lieber, however, was not seeking such information.

Lieber's request was limited to information about housing inquiries from or on behalf of people who had been accepted as freshmen, but who had not yet enrolled. The University has not cited, and we have not found, any precedent for construing the term "student" to include such individuals. In normal discourse, a person is usually not regarded as being a student at a school unless and until he has attended class there. See, *e.g.*, Webster's Third New International Dictionary 2268 (1986) (student, 1a: "one enrolled in a class or course in a school, college, or university"). Other laws governing access to school records have incorporated this conventional interpretation. For example, section 2(a) of the Illinois School Student Records Act (105 ILCS 10/2(a) (West 1994)) defines "student" as "any person enrolled or previously enrolled in a school." Similarly, the Federal Family Educational Rights and Privacy Act states that the term "student" "does not include a person who has not been in attendance" at an educational agency or institution. 20 U.S.C. § 1232g(a)(6) (1994).[2]

Although section 7(1)(b)(i)'s exemption applies to

---

[2]That the individuals involved in Lieber's request would not qualify as students under these laws is presumably why the

"other individuals receiving \*\*\* educational \*\*\* services," as well as to "students" (5 ILCS 140/7(1)(b)(i) (West 1994)), it still does not fit Lieber's request. Assuming, for the sake of argument, that freshman student housing constitutes an "educational service" within the meaning of the law, the University cannot escape the fact that none of the subjects of Lieber's request had actually availed themselves of those services, directly or indirectly. By definition, they could not have. Only freshmen can live in freshman housing. Lieber's request, however, pertained exclusively to inquiries by or on behalf of people who would not be freshmen until the following academic year, people who might decide against attending SIU and never enroll as freshmen there, and who, if they did enroll, might opt to live in approved off-campus housing and never utilize the University's housing services at all. To adopt the University's position under these circumstances would require us to hold, in effect, that asking about a service is the same as receiving it. In law, as in life, that is not the case.

There is another, equally fundamental, impediment to the University's reliance on section 7(1)(b)(i). The University claims that the names and addresses of accepted freshmen constitute "personal information" within the meaning of the statute. Although names and addresses are unquestionably personal in the sense that they are specific to particular persons, the statutory reference to "personal information" means more than simply that. This is apparent when one considers the provision as a whole. For example, sections 7(1)(b)(ii) and 7(1)(b)(iii), which follow the provision at issue here,

University abandoned its original claim that the information was prohibited from disclosure by federal or state law and therefore exempt under section 7(1)(a) of the Act (5 ILCS 140/7(1)(a) (West 1994)).

employ the same term. They exempt from disclosure "personal information" about elected officials and licensed professionals. If the University's construction were correct and "personal information" embraced even basic identification, the public would have no right to learn the names of officials they had placed in office, and, under this statute, a person could not confirm that the doctor who was about to perform surgery on him was actually licensed to practice medicine. We do not believe the General Assembly intended such absurd results.

Where the legislature intended to exempt a person's identity from disclosure, it did so explicitly. For example, the exemption in section 7(1)(b)(v) refers to "information revealing the identity" of certain persons providing information to administrative, investigative, law enforcement or penal agencies; section 7(1)(c)(iv) speaks of the "identity of a confidential source"; and section 7(1)(u) exempts from disclosure information regarding a university's adjudication of grievance or disciplinary cases to the extent that disclosure would "reveal the identity" of the person involved. 5 ILCS 140/7(1)(b)(v), 7(1)(c)(iv), 7(1)(u) (West 1994). Accordingly, taken in context and considering the statute as a whole, the phrase "personal information" must have been intended by the legislature to be understood not in the sense of basic identification, but in the sense of information that is "confidential" or "private." The very purpose of section 7(1)(b), after all, is to protect "personal privacy."

Even if one disagrees with this proposition, the University's claimed exemption must fail. Although the University has strenuously invoked the notion that the names and addresses of accepted students are private and must be protected from disclosure, materials submitted to the trial court indicate that the University routinely makes available to other groups, including the

local newspaper and religious organizations, lists containing the names and addresses of individuals who have been accepted by the University but who have not yet enrolled. In addressing similar situations under the federal Freedom of Information Act, the federal courts have held that voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else. *Cooper v. United States Department of the Navy*, 594 F.2d 484, 485-86 (5th Cir. 1979). As the Eighth Circuit Court of Appeals explained, selective disclosure by the government

"is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government the FOIA was intended to obviate." *State of North Dakota ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978).

We agree with these principles and believe they should be applied here to bar the University from asserting an exemption under section 7(1)(b)(i) of Illinois' Freedom of Information Act. If the address lists can be disclosed to campus ministries and the local newspaper, the University has no valid basis for withholding them from Stan Lieber.

The only reason the University has treated Lieber differently is that he is in direct competition with the University for what is apparently a dwindling freshman housing market. And so we arrive at the other justification given by the University for denying disclosure and the reason given by the circuit court for granting summary judgment in the University's favor, namely, that Lieber is seeking the information for commercial purposes. The University and the circuit court based their position on section 1 of the FOIA, which states that it is not intended to be used "for the purpose of furthering a commercial enterprise." 5 ILCS 140/1 (West 1994). We note, however, that section 1 is simply

a declaration of policy or preamble. As such, it is not part of the Act itself (*Triple A Services, Inc. v. Rice,* 131 Ill. 2d 217, 227 (1989)) and has no substantive legal force (see *Monarch Gas Co. v. Illinois Commerce Comm'n,* 261 Ill. App. 3d 94, 99 (1994)).

For the foregoing reasons, the information requested by Lieber was, as a matter of law, not exempt from disclosure. Accordingly, the appellate court was correct in reversing summary judgment in favor of the University and remanding with directions that summary judgment be entered in favor of Lieber. The appellate court's judgment is therefore affirmed.

*Affirmed.*