# Illinois Official Reports

## Appellate Court

*City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHICAGO, Plaintiff-Appellee, v. JANSSEN PHARMACEUTICALS, INC., Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0870 |
| Filed | March 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-10572; the Hon. Sanjay Taylor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Carolyn J. Kubota and Charles C. Lifland, of O'Melveny & Meyers LLP, and Michael P. Doss and Scott D. Stein, of Sidley Austin LLP, both of Chicago, for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon concurred in the judgment and opinion.<br>Justice Lampkin specially concurred, with opinion. |

**OPINION**

¶ 1    Defendant, Janssen Pharmaceuticals, Inc. (Janssen), appeals the circuit court of Cook County's order denying a motion to enforce a protective order previously entered between Janssen and plaintiff, the City of Chicago (City). On appeal, Janssen maintains that the documents it provided to the City pursuant to the protective order were not subject to disclosure under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)). Specifically, Janssen argues that the documents are exempt from inspection and copying under two separate provisions of FOIA as (1) their disclosure is specifically prohibited by State law (5 ILCS 140/7(1)(a) (West 2014)) and (2) the documents are trade secrets or commercial or financial information furnished under a claim that they are confidential and such disclosure would cause competitive harm to Janssen's business (5 ILCS 104/7(1)(g) (West 2014)). At oral argument, the defendant argued only that their disclosure is prohibited by section 7(1)(a) (5 ILCS 140/7(1)(a) (West 2014)). For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    Prior to filing the lawsuit, the City served Janssen with a subpoena pursuant to section 1-22-050 of the False Claims chapter of the Chicago Municipal Code (Ordinance) (Chicago Municipal Code § 1-22-050 (added Dec. 15, 2004)), as it was seeking documents that pertained to the City's civil investigation into false claims submitted as a result of certain of Janssen's practices in marketing opioids, *i.e.*, a synthetic narcotic. Janssen, however, declined to produce the documents requested by the City. As a result, on September 23, 2013, the City filed the instant suit due to Janssen's failure to respond to the subpoena.

¶ 4    While the matter was pending in the circuit court, Janssen and the City negotiated a "Confidentiality Stipulation and Protective Order" (protective order), which was entered by the circuit court on November 12, 2013. The protective order provided in pertinent part that the information produced by Janssen, regardless of confidentiality designation, could only be used in accordance with the provisions of section 1-22-050(i) of the Ordinance or as otherwise required by law or court order. The City acknowledged in the protective order that the information produced by Janssen may contain trade secrets or other confidential information and that Janssen "considers this information to be protected and exempt from disclosure under the Illinois Freedom of Information Act." The protective order further provided that the City would notify Janssen if a request was made by a third party to disclose the produced information so as to allow Janssen "the opportunity to take steps to prevent disclosure; provided, however, that nothing in this Protective Order shall be read to conflict with the City of Chicago's duty to comply" with the public disclosure laws, including FOIA.

¶ 5    On November 20, 2013, the City withdrew its petition to enforce the subpoena without prejudice and was granted leave to reinstate "before this Court in the event that further disputes or issues arise between the parties with respect to the subpoena." Janssen then produced 114,230 pages of documents to the City, many of which were marked "confidential" pursuant to the protective order.

¶ 6    On June 2, 2014, the City filed suit against Janssen, Janssen's parent, and various other pharmaceutical companies alleging violations of the Ordinance. As a result of filing this lawsuit, USA Today issued a FOIA request to the City seeking copies of documents in support of certain claims the City asserted against Janssen. Pursuant to the protective order, the City

notified Janssen of the request and informed Janssen that it believed three documents were responsive to USA Today's request.

¶ 7 Ultimately, on October 22, 2014, Janssen filed a motion to enforce the protective order in the circuit court alleging that the City was required to deny third-party requests brought under FOIA pursuant to the protective order. Janssen further argued that the documents sought were exempt from disclosure under section 7 of FOIA (5 ILCS 140/7 (West 2014)). Pertinent to this appeal, Janssen specifically asserted two reasons the documents were exempt. First, that section 7(1)(a) prevented disclosure of the documents where the information sought was specifically prohibited from disclosure by State law (5 ILCS 140/7(1)(a) (West 2014)). According to Janssen, subsections (i) and (k) of the Ordinance (Chicago Municipal Code § 1-22-050(i), (k) (added Dec. 15, 2004)) qualified as such a "State law" as it manifested the required legislative intent to prohibit public disclosure of subpoenaed documents. Second, Janssen maintained the documents were exempt under section 7(1)(g) of FOIA (5 ILCS 140/7(1)(g) (West 2014)) as the production of its confidential documents would make it more difficult for a public body to induce individuals to submit similar information in the future, *i.e.*, such production would have a "chilling effect." In addition to finding the documents sought by USA Today were exempt from disclosure pursuant to FOIA, Janssen also requested the circuit court enter a declaratory judgment prohibiting the City from disclosing all of Janssen's nonpublic documents to third parties under FOIA.

¶ 8 After the matter was fully briefed and argued, on February 26, 2015, the circuit court issued a written memorandum denying Janssen's motion. Pertinent to this appeal, the circuit court found that Janssen's documents were not exempt from FOIA under section 7(1)(a) because the Ordinance "in no way" implements State law. The circuit court further found that even if the Ordinance fell within the purview of section 7(1)(a) of FOIA, sections 1-22-050(i) and 1-22-050(k) of the Ordinance did not prohibit disclosure. Specifically, section 1-22-050(i) expressly allowed disclosure if the City determines, in its judgment, that it is necessary for the effective enforcement of laws. In addition, section 1-22-050(k) does not generally prohibit disclosure, "rather, the exemption from disclosure is limited by its express terms to the [Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2014))]." As to section 7(1)(g) of FOIA, the circuit court found the only party that could assert a "chilling effect" under section 7(1)(g) of FOIA was the public body in possession of the documents.

¶ 9 On March 23, 2015, Janssen filed its notice of appeal. Thereafter, Janssen moved to stay enforcement of the circuit court's order pending this appeal, and the circuit court denied the request. Janssen moved for similar relief in this court, which we also denied. The City then disclosed the relevant documents to USA Today on May 1, 2015.

¶ 10 ANALYSIS

¶ 11 On appeal, Janssen argues that the circuit court erred when it determined the remaining documents (which were not tendered to USA Today) were not exempt from disclosure under sections 7(1)(a) and 7(1)(g) of FOIA. 5 ILCS 140/7(1)(a), (g) (West 2014).[1] Section 7(1)(a) generally provides that information is exempt from disclosure where it is "specifically prohibited from disclosure by federal or State law." 5 ILCS 140/7(1)(a) (West 2014). Under

---

[1]We observe that Janssen admits in its brief that this appeal is moot with regards to the documents which were already tendered to USA Today by the City.

section 7(1)(g), information is exempt from disclosure where it consists of a "trade secrets or commercial or financial information" that is "furnished under a claim that they are proprietary, privileged or confidential" and that such disclosure "would cause competitive harm to the person or business" in regards to the specific records requested. 5 ILCS 104/7(1)(g) (West 2014). As a result, Janssen requests that this court reverse the order of the circuit court and find that, as a matter of law, all nonpublic documents it produced to the City pursuant to the protective order are exempt from disclosure under FOIA.

¶ 12    In response, the City argues that Janssen's documents do not fall under the exceptions to disclosure under FOIA because (1) the ordinance is not "State law" as required under section 7(1)(a), and (2) the policy concerns of section 7(1)(g) are not applicable here where the disclosure of Janssen's documents will have no effect on the City's ability to acquire similar information from others.[2]

¶ 13    Whether the records are exempt from disclosure under FOIA (5 ILCS 140/7 (West 2014)), as Janssen claims, is a matter of statutory construction, and our review proceeds *de novo*. *Lucas v. Prisoner Review Board*, 2013 IL App (2d) 110698, ¶ 15; *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404 (2009). For the reasons that follow, we find that Janssen's remaining documents are not exempt from disclosure under either section 7(1)(a) or section 7(1)(g) of FOIA.

¶ 14    We begin our analysis by explaining the purpose of FOIA, which is "to open governmental records to the light of public scrutiny." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989); see 5 ILCS 140/1 (West 2014). Thus, we are directed by our legislature to view FOIA from the standpoint that, "All records in the custody or possession of a public body are presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2014). The term "public body" is broadly defined in FOIA to include cities such as the City of Chicago. 5 ILCS 140/2(a) (West 2014). Our legislature has further intended that, "[r]estraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information." 5 ILCS 140/1 (West 2014).

¶ 15    "Based upon the legislature's clear expression of public policy and intent set forth in section 1 of the FOIA that the purpose of that Act is to provide the public with easy access to government information, this court has held that the FOIA is to be accorded 'liberal construction to achieve this goal.' " *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006) (quoting *Bowie*, 128 Ill. 2d at 378). Although FOIA outlines several exemptions to disclosure, those exemptions are read narrowly. *Day v. City of Chicago*, 388 Ill. App. 3d 70, 73 (2009) (citing *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997)). "Thus, when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions set forth in section 7 of the Act applies." *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003).

¶ 16    Our analysis of whether Janssen's remaining documents fall within a FOIA exception is guided by several well-established principles of statutory construction. It is well settled that the

_____

[2]The City initially asserted in its brief that Janssen's appeal is moot because the documents were already provided to USA Today. However, at oral argument the City conceded that, in regards to the declaratory judgment action for the remaining documents, the appeal was not moot.

primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). In determining legislative intent, our inquiry begins with the plain language of the statute, which is the most reliable indication of the legislature's objectives in enacting a particular law. *In re Madison H.*, 215 Ill. 2d 364, 372 (2005). A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). "In construing a statute, we presume that the legislature, in its enactment of legislation, did not intend absurdity, inconvenience or injustice." *Southern Illinoisan*, 218 Ill. 2d at 415. We use the same rules of construction when interpreting municipal ordinances as we do when construing statutes. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009).

¶ 17   In the instant matter, Janssen first argues that the exemption to FOIA set forth in section 7(1)(a) (5 ILCS 140/7(1)(a) (West 2014)) applies to the documents it provided to the City. Section 7(1)(a) states in pertinent part:

> "(1) When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying. Subject to this requirement, the following shall be exempt from inspection and copying:
>
>> (a) Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." 5 ILCS 140/7(1)(a) (West 2014).

¶ 18   Janssen maintains that section 1-22-050(k) of the Ordinance (Chicago Municipal Code § 1-22-050(k) (added Dec. 15, 2004)) qualifies as a "State law" that expressly prohibits the disclosure of the documents it provided to the City pursuant to the protective order. Section 1-22-050(k) of the Ordinance states:

> "(k) *Disclosure exemption*. Any documentary material, answers to written interrogatories, or oral testimony provided under any subpoena issued under subsection (a) shall be exempt from disclosure under the Illinois Administrative Procedure Act." (Emphasis in original.) *Id.*

Janssen reasons that the Ordinance is equivalent to a "State law" because the Ordinance is "a valid exercise of home rule power," and as a home rule unit, "Chicago has the same power as the State to legislate [FOIA] exemptions." Janssen further asserts that the plain language of section 1-22-050(k) evidences an "unambiguous legislative [*sic*] intent to shield subpoenaed documents from public disclosure."

¶ 19   In response, the City contends that the section 7(1)(a) exemption does not apply here as the Ordinance is not a State law or a rule or regulation implementing State law. The City maintains that laws enacted by the State legislature do not include municipal ordinances and that the Illinois Constitution makes it evident that only the legislature promulgates laws and that a home rule municipality only promulgates ordinances. Consequently, while ordinances technically operate as effectively as a law passed by the legislature, municipal ordinances and State laws are nonetheless distinct enactments. The City further asserts that the Ordinance

"does not prohibit disclosure on its own terms" where the Ordinance "expressly authorizes the Corporation Counsel to make 'available for examination by any individual' subpoenaed information, when 'determined necessary by the corporation counsel and subject to the conditions imposed by him or her for effective enforcement of the laws of this city, or as otherwise provided by court order' " (quoting Chicago Municipal Code § 1-22-050(i)(2) (added Dec. 15, 2004)).

¶ 20    In support of its argument that City of Chicago ordinances have the same force and effect as "State law" so as to trigger the disclosure exemption under section 7(1)(a) of FOIA, Janssen relies on the cases of *City of Chicago v. Roman*, 184 Ill. 2d 504, 512 (1998), and *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30, for the propositions that (1) because the City is a home rule unit of local government its ordinances operate as effectively as a law passed by the state legislature and (2) our constitution was written with the intention to provide home rule units the broadest powers possible. While these propositions are undisputed by the City, we find Janssen has failed to demonstrate how we can bypass the plain and ordinary language of section 7(1)(a) and instead read into the statute that the legislature intended that the words "State law" include an ordinance. Our fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552-53 (2006). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). Accordingly, if the language of the statute is not ambiguous, we need not, as Janssen suggests, resort to other aids of statutory construction to determine the legislative intent. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 21    Janssen maintains that our supreme court's decision in *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1 (2009), is dispositive and provides support for its proposition that "State law" should be read to include an ordinance. We disagree. In *Landis*, our supreme court considered whether subsection (f) of section 5-12-080 of the Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-080(f) (amended May 14, 1997)) imposes a " 'statutory penalty' " within the meaning of section 13-202 of the Code of Civil Procedure (Code) (735 ILCS 5/13-202 (West 2004)). *Landis*, 235 Ill. 2d at 4. There, the plaintiffs filed suit against the defendant-landlords pursuant to section 5-12-080 of the RLTO and asserted they were entitled to damages as prescribed by subsection (f) of the ordinance. *Id.* at 5. The defendants moved to dismiss the complaint contending that it was untimely under the two-year statute of limitations in section 13-202, which provided that actions for damages for a statutory penalty shall be commenced within two years. *Id.* at 5-6. In response, the plaintiffs argued that subsection (f) of section 5-12-080 of the RLTO did not impose a " 'statutory penalty' " within the meaning of section 13-202 and, therefore, their claim was governed either by the 5-year limitations period in the " 'catch-all' " provision of section 13-205 of the Code or by the 10-year limitations period for an action to enforce a written contract in section 13-206 of the Code. *Id.* at 6. The trial court agreed with the defendants' argument and found that the two-year limitation period applied, dismissing the plaintiff's complaint, and the appellate court affirmed. *Id.*

¶ 22    Our supreme court identified the main issue in *Landis* to turn on the proper interpretation of the phrase " 'statutory penalty' in section 13-202." *Id.* In construing this phrase, the court first determined that the phrase "statutory" was not defined by section 13-202 and, thus, it was presumed that the legislature intended the term to have its ordinary and popularly understood meaning. *Id.* at 8. After examining various dictionary definitions of the word "statutory," the

court concluded that the word was ambiguous (*id.* at 11), as some dictionaries defined "statutory" as laws enacted by the act of a legislative power (*id.* at 9), while others interpreted it to mean generally a law passed by a legislative body (*id.* at 10). Finding "statutory" to be ambiguous, the court turned to other aids of statutory construction to discern the legislative intent, namely that (1) statutes are to be given "the fullest, rather than the narrowest, possible meaning to which they are susceptible" and (2) it is appropriate to consider the consequences that would result from construing a statute one way or the other. *Id.* at 11-12. Our supreme court ultimately concluded that "the legislature must have intended for a 'statutory penalty' to include a municipal ordinance." *Id.* at 12.

¶ 23     Janssen's reliance on *Landis* is misplaced. First, the *Landis* court did not consider whether the legislature intended that a "State law" included a municipal ordinance within the context of FOIA. Second, Janssen assumes, without any argument in support, that the terms "statutory" and "State law" are equivalent and that we must construe section 7(1)(a) similarly. While no further discussion is necessary on this point as Janssen has forfeited it pursuant to Rule 341(h)(7), we observe that the word "statutory" and the phrase "State law" are distinct. "Statutory" is an adjective and as such describes the particular quality of the word it modifies (in *Landis* it was the word "penalty"). In contrast, the phrase "State law" involves a proper noun which our legislature intended to refer to the State of Illinois. See 5 ILCS 140/1 (West 2014). Accordingly, "State" and "statutory" are not equivalent, and Janssen's attempt at negating the importance of "State" as a proper noun in its briefs by referring to this phrase as "state law" (lower case) is not well taken.

¶ 24     Third, Janssen relies on the proposition set forth in *Landis* that, "It is a general principle of statutory interpretation that we give statutes the fullest, rather than the narrowest, possible meaning to which they are susceptible." *Landis*, 235 Ill. 2d at 11. While that proposition is in no doubt correct, our legislature and, in turn, our supreme court have essentially limited it when it comes to interpreting the FOIA exceptions. FOIA is intended to "open governmental records to the light of public scrutiny" (*Bowie*, 128 Ill. 2d at 378), and, thus, under FOIA, "public records are presumed to be open and accessible" (*Lieber*, 176 Ill. 2d at 407). FOIA expressly contemplates "full and complete" disclosure of the affairs of government and recognizes that such disclosure is necessary to enable the people to fulfill their duties to monitor government. 5 ILCS 140/1 (West 2014). To that end, our supreme court has held that "FOIA is to be accorded 'liberal construction' " (*Southern Illinoisan*, 218 Ill. 2d at 416 (quoting *Bowie*, 128 Ill. 2d at 378)) and consequently that "*the statutory exemptions from disclosure must be read narrowly*" (emphasis added) (*Stern*, 233 Ill. 2d at 411). See *Southern Illinoisan*, 218 Ill. 2d at 416; *Lieber*, 176 Ill. 2d at 407. In light of the explicit intention of our legislature to construe the exceptions narrowly and our supreme court's holdings in accordance with this principle, we conclude that the phrase "State law" must be afforded its plain and ordinary meaning, which necessarily excludes municipal ordinances. See *Krautsack*, 223 Ill. 2d at 552-53 (our fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent); *Jamison*, 229 Ill. 2d at 188 (the best indication of legislative intent is the language of the statute, given its plain and ordinary meaning). As we have determined that the phrase "State law" does not include municipal ordinances, it follows that section 7(1)(a) of FOIA does not exempt the documents from inspection and copying via section 1-22-050(k) of the Ordinance.

¶ 25    Janssen next argues that the exemption provided in section 7(1)(g) of FOIA applies to the documents it submitted to the City pursuant to the protective order. Section 7(1)(g) provides in pertinent part that the following shall be exempt from inspection and copying:

> "(g) Trade secrets and commercial or financial information obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are proprietary, privileged or confidential, and that disclosure of the trade secrets or commercial or financial information would cause competitive harm to the person or business, and only insofar as the claim directly applies to the records requested." 5 ILCS 140/7(1)(g) (West 2014).

Janssen does not assert that its documents constituted "trade secrets" under section 7(1)(g) or even that the remaining documents are confidential. Janssen also does not argue that disclosure of its documents would cause it competitive harm. At most, Janssen contends that disclosure of the documents would have a "chilling effect" on other organizations complying with a subpoena issued by the City in the future. Janssen maintains that this court's jurisprudence supports its argument, as this court has construed the term "trade secrets" broadly to include "both conventional trade secrets; i.e., information which if disclosed would 'inflict substantial competitive harm,' and other commercial records; i.e., information which, if disclosed, would 'make it more difficult for the agency to induce people to submit similar information in the future.' " (quoting *Roulette v. Department of Central Management Services*, 141 Ill. App. 3d 394, 400 (1986)). Thus, Janssen maintains that because it "willingly" produced documents to the City under the protective order, disclosure of these documents is prohibited due to its "chilling effect."

¶ 26    In support of this position, Janssen primarily relies upon this court's decision in *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990 (2007). In that case, this court held that a confidential settlement agreement, which was willingly disclosed by a corporation to a public body, was exempt from disclosure under section 7(1)(g) of FOIA because "[d]isclosure of the information after the ICC's representation that the documents would not be disclosed would discourage [the corporation] and other similarly situated organizations from providing the ICC with similar information in the future." *Id.* at 995-96. In coming to this conclusion the *BlueStar* court stated the main proposition upon which Janssen relies, namely that, "The term *trade secret* in the context of the FOIA has been interpreted to include information that (1) would either inflict substantial competitive harm or (2) make it more difficult for the agency to induce people to submit similar information in the future." (Emphasis in original.) *Id.* at 995.

¶ 27    What neither party brings to this court's attention, however, is that subsequent to this court's opinion in *BlueStar*, section 7(1)(g) of FOIA was substantively amended by our legislature. Whereas before section 7(1)(g) excluded from disclosure "[t]rade secrets and commercial or financial information obtained from a person or business where the trade secrets or information are proprietary, *or* where disclosure of the trade secrets or information *may* cause competitive harm" (emphases added) (5 ILCS 140/7(1)(g) (West 2004)), the relevant statute now provides that "[t]rade secrets and commercial or financial information obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are proprietary, privileged or confidential, *and* that disclosure of the trade secrets or commercial or financial information *would* cause competitive harm to the person or business, and only insofar as the claim directly applies to the records requested"

(emphases added) (5 ILCS 140/7(1)(g) (West 2014)). Thus, the legislature set forth new requirements for a disclosure exemption under section 7(1)(g). It now requires that, for the exemption to apply, the document must contain (1) a trade secret, commercial, or financial information; (2) that was obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are either (a) proprietary, (b) privileged, or (c) confidential; *and* (3) that disclosure of the trade secrets or commercial or financial information would cause competitive harm to the person or business. *Id.*

¶ 28   It is presumed that, in enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation. *Fink v. Ryan*, 174 Ill. 2d 302, 308 (1996). Accordingly, we presume that the when the legislature amended section 7(1)(g) it was aware of this court's decision in *BlueStar*. Consequently, this court's statement in *BlueStar* that "[t]he term *trade secret* in the context of the FOIA has been interpreted to include information that (1) would either inflict substantial competitive harm or (2) make it more difficult for the agency to induce people to submit similar information in the future" (emphasis in original) (*BlueStar*, 374 Ill. App. 3d at 995) is only applicable to those FOIA requests made pursuant to the earlier versions of the statute.

¶ 29   While the policy concerns that were at issue in *BlueStar* are still valid, in the present case Janssen does not meet the threshold requirements of section 7(1)(g) so as to exempt its documents from disclosure. Janssen has failed to assert both before the trial court and on appeal why the disclosure of the alleged confidential information contained in the documents it produced to the City would cause it competitive harm. See 5 ILCS 140/7(1)(g) (West 2014). Because Janssen failed to provide this court with any basis as to why the disclosure of its documents would cause it competitive harm, whether in the pleadings or the record, we conclude Janssen has failed to meet its burden of persuasion and thus its claim for an exemption under section 7(1)(g) fails. See *Yamnitz v. William J. Diestelhorst Co.*, 251 Ill. App. 3d 244, 250 (1993) (the appellant has the burden of persuasion on appeal regarding its claims of error); *Flynn v. Vancil*, 41 Ill. 2d 236, 241 (1968); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 30   In sum, we find Janssen's documents do not fall within either section 7(1)(a) or 7(1)(g) of FOIA and affirm the judgment of the circuit court.

¶ 31                                    CONCLUSION

¶ 32   For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 33   Affirmed.

¶ 34   JUSTICE LAMPKIN, specially concurring.

¶ 35   I concur with the majority's holding and analysis concerning Janssen's FOIA exception arguments but write separately to address the parties' statements that this appeal is moot concerning the three documents the City already disclosed to USA Today.

¶ 36   The parties have misconstrued the law concerning mootness as it applies to the three disclosed documents. An issue is moot where an actual controversy no longer exists between the parties or where events have occurred that make it impossible for the court to grant effectual relief. *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 198 (1997). Once an

agency produces all the records related to a plaintiff's request, the merits of that plaintiff's claim for relief concerning the production of information becomes moot. *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 782 (1999). However, the straight-forward mootness inquiry applicable in *Duncan* is not dispositive in the instant case, which involves a "reverse-FOIA action" by Janssen, a business entity that was required to submit information to the City and sought to prevent the City from revealing that information to a third party in response to the latter's FOIA request. See *Twin-Cities Broadcasting Corp. v. Reynard*, 277 Ill. App. 3d 777, 781 (1996).

¶ 37   Here, Janssen seeks typical appellate and declaratory relief: reversal of the circuit court's order and declaratory relief concerning the documents Janssen provided to the City. Janssen continues to contest the question of whether the provided documents were exempt from disclosure under sections 7(1)(a) and 7(1)(g) of FOIA, and the City maintains that those FOIA exceptions were not applicable. The City indicates that it will continue to apply this interpretation of sections 7(1)(a) and 7(1)(g) to FOIA requests, and Janssen remains subject to submitting documents to the City pursuant to the municipal ordinance. The parties clearly have a legally cognizable interest in the outcome of this appeal seeking declaratory relief. See *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003) (the essential requirements of a declaratory judgment action are (1) a party with a legal tangible interest, (2) another party having an opposing interest, and (3) an actual controversy between the parties concerning such interests). Accordingly, the appeal is not moot regarding even the three documents already disclosed to USA Today.