NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210467-U

NO. 4-21-0467

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JASON F. WOOLSEY,<br> Plaintiff-Appellee,<br>v.<br>THE ILLINOIS STATE POLICE,<br> Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the<br>Circuit Court of<br>Jersey County<br>No. 19CH27<br><br>Honorable<br>Allison Lorton,<br>Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's entry of summary judgment, and subsequent award of attorney fees, pursuant to the Illinois Freedom of Information Act, directing the Illinois State Police to provide plaintiff his application for a Firearm Owner's Identification Card and its letter denying the application was proper.

¶ 2    On March 12, 2021, pursuant to the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)), the trial court ordered the Illinois State Police (ISP) to provide plaintiff Jason F. Woolsey all documents relating to his application for a firearm owner's identification (FOID) card, made pursuant to the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/0.01 *et seq.* (West 2020)). On July 22, 2021, the court awarded Woolsey his attorney fees and costs pursuant to FOIA. ISP appeals, raising two issues: (1) whether a permanent injunction bars ISP from producing the records to Woolsey and (2) whether the language of FOIA exempts the documents from disclosure. Finding neither FOIA nor the

injunction bars ISP from producing plaintiff's documents to him, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4        On November 8, 2018, Woolsey through his attorney sought from ISP, pursuant to FOIA, documents related to Woolsey's FOID card, including (1) his application, (2) any denial of the application, and (3) any document containing any information relating to any legal disability that would have made Woolsey ineligible for a FOID card. He also specifically limited his request to information about his own FOID card, and sought documents relating to ISP's processing time for FOID appeals in general. The request contained Woolsey's name, city of residence, and his social security number.

¶ 5        ISP denied Woolsey's request for the documents, citing section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2020)), exempting from disclosure, *inter alia*, the names and information of people who have applied for FOID cards. ISP further advised it did not possess documents related to the processing times of FOID appeals.

¶ 6        On June 5, 2019, Woolsey filed a single-count complaint in the trial court seeking production pursuant to FOIA of the same information and, in addition, his attorney fees and costs incurred in prosecuting the matter. Woolsey later filed a motion for summary judgment, citing as support, a judgment entered by the Madison County circuit court in a factually similar case. ISP also moved for summary judgment, asserting the same claims it makes herein, namely the disclosure is barred by a permanent injunction, and the plain language of FOIA excluded from disclosure the information sought. The permanent injunction ISP relied upon was entered by the Peoria County circuit court in an action brought by the Illinois State Rifle Association. That

injunction provides ISP is prohibited from releasing "personally identifying information" of those who have applied for FOID cards.

¶ 7          The trial court held a hearing on the motions for summary judgment, at which time Woolsey withdrew his request for information relating to the processing times of FOID card appeals. On March 12, 2021, the court granted Woolsey summary judgment and denied ISP's cross-motion. The court generally adopted the reasoning of the Madison County circuit court in the matter referenced above. The court noted the exemption claimed by ISP did not "speak specifically to an applicant seeking his/her own information from a public body." Further, the court explained the use of the terms "people" and "names," being plural, suggested section 7.5(v) of FOIA did not apply to those seeking information about their own FOID card applications (5 ILCS 140/7.5(v) (West 2020)). Without explanation, the court found the permanent injunction did not prohibit ISP from releasing to Woolsey the information he sought.

¶ 8          Subsequently, Woolsey filed a petition seeking his attorney fees and costs pursuant to FOIA. On July 22, 2021, the trial court awarded Woolsey $2046.45 in fees and costs and, on August 17, 2021, granted ISP's motion to stay enforcement of the court's orders pending appeal.

¶ 9          This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11          ISP appeals from the trial court's order claiming the plain language of FOIA bars ISP's disclosure to plaintiff of information related to his FOID card, and that the Peoria County circuit court's permanent injunction prohibits the release as well.

¶ 12                          A. Standard of Review

¶ 13          Our interpretation of a statute is a *de novo* review. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Our review of a trial court's entry of summary judgment is also *de novo*. *Id.*

¶ 14                              B. The Illinois Freedom of Information Act

¶ 15        The Act's section of primary interest provides:

"Statutory exemptions. To the extent provided for by the statutes referenced below,

the following shall be exempt from inspection and copying:

* * *

(v) Names and information of people who have applied for or received Firearm

Owner's Identification Cards under the Firearm Owners Identification Card Act." 5

ILCS 140/7.5(v) (West 2018).

¶ 16        The Act's precatory language directs that:

"Presumption. All records in the custody or possession of a public body are

presumed to be open to inspection or copying. Any public body that asserts that a

record is exempt from disclosure has the burden of proving by clear and convincing

evidence that it is exempt." 5 ILCS 140/1.2 (West 2018).

¶ 17        The Act's explicit policy statement describes in detail the government's

responsibility to wit:

"Pursuant to the fundamental philosophy of the American constitutional form of

government, it is declared to be the public policy of the State of Illinois that all

persons are entitled to full and complete information regarding the affairs of

government and the official acts and policies of those who represent them as public

officials and public employees consistent with the terms of this Act. ***

    *** It is a fundamental obligation of government to operate openly and

provide public records as expediently and efficiently as possible in compliance with

this Act.

Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle. This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible and adherence to the deadlines established in this Act. ***

*** The General Assembly declares that providing records in compliance with the requirements of this Act is a primary duty of public bodies to the people of this State, and this Act should be construed to this end, fiscal obligations notwithstanding." 5 ILCS 140/1 (West 2018).

¶ 18              C. FOIA Does Not Exempt the Production Sought

¶ 19       ISP argues both section 7.5(v) of FOIA, and a permanent injunction entered by the Peoria County circuit court, prohibit it from providing Woolsey his FOID application, denial letter, and information relating to any legal disability preventing ISP from issuing Woolsey a FOID card. Until recently, this was an issue of first impression, but during the pendency of this appeal, the Fifth District released its opinion in *Hart v. Illinois State Police*, 2022 IL App (5th) 190258, which we find persuasive. In *Hart*, via FOIA requests, one plaintiff sought from ISP "any and all documents" related to her FOID card, and the other plaintiff sought his "file." *Id.* ¶ 13. The appellate court's review however was limited to the trial court's order directing ISP to release to each plaintiff his or her respective application and denial letter. *Id.* ISP argued the FOID-related

documents the plaintiffs sought were exempt from production pursuant to section 7.5(v) of FOIA, and that their production was also prohibited by the same permanent injunction ISP urges herein. *Hart*, 2022 IL App (5th) 190258, ¶¶ 19, 30. The Fifth District concluded neither section 7.5(v) of FOIA, nor the permanent injunction, prohibited ISP from releasing the plaintiffs' FOID applications or denial letters. *Id.* ¶ 32.

¶ 20　　　　In explaining it decision, the appellate court noted the oft-cited premises the statutory language is the best indicator of the legislature's intent, and if the language is "clear and unambiguous," the language must be applied. *Id.* ¶ 15. In addition, an entire statutory framework must be considered together, interpreting all language "in light of other relevant provisions." *Id.* ¶ 16.

¶ 21　　　　Applying the foregoing, the Fifth District reasoned,

"As the circuit court noted, the legislature used the plural terms 'names' and 'people' and not the singular 'name' or 'person.' ' "Person" ' is defined in section 2(b) of FOIA as 'any individual, corporation, partnership, firm, organization or association, acting individually or as a group.' 5 ILCS 140/2(b) (West 2018). As such, the legislature could have used the singular term 'person' in section 7.5(v), which would have incorporated by definition an individual or group but instead elected to use the plural term 'people' indicating more than one individual. We also note that the legislature did not include a provision that the plural use of a term includes the singular that is familiar in other statutory schemes." *Id.* ¶ 21.

¶ 22　　　　The court noted FOIA does use the singular "person" elsewhere and that interpreting "people" in section 7.5(v) to describe an individual person would render the use of

"people" meaningless, which a court cannot do. *Id.* ¶ 22. Thus, the Fifth District found the use of "people" necessarily means more than a single person. *Id.*

¶ 23    To aid in interpreting section 7.5(v), the appellate court noted that section 7(1)(c) of FOIA permits the release of personal information if the " 'disclosure is consented to in writing by the individual subjects of the information.' " (Emphasis omitted.) *Id.* ¶¶ 23-24 (quoting 5 ILCS 140/7(1)(c) (West 2018)). Thus, though FOIA generally prohibits the release of personal information, the legislature provided for an exception such that "an individual could consent in writing to the release of their own information." *Id.* ¶ 25. Further, section 7.5(v) only bars the disclosure of the "names and information" of those who have applied for or received a FOID card, but does not prohibit the release of "any specific document, such as an application or denial letter." *Id.* Thus, reading these sections together, the Fifth District concluded FOIA did not prohibit ISP from releasing to the plaintiffs their applications and denials because plaintiffs consented to the disclosure of their own information. *Id.*

¶ 24    Noting (1) a court is to presume the legislature did not intend absurdity or inconvenience, (2) plaintiffs knew their own names, information, and their FOID card status, and (3) plaintiffs had consented to the release of their own information, the Fifth District found that the result would in fact be absurd if it interpreted FOIA to bar the disclosure of plaintiffs' own information to them. *Id.* ¶¶ 27-28.

¶ 25    ISP also argued it is impossible to verify whether a person making a FOIA request purportedly seeking their own FOID information is actually the individual whose information is the subject of the request. *Id.* ¶ 29. The court found this unpersuasive, *inter alia*, because ISP could request additional information from the person submitting the request to verify the individual was seeking their own information. *Id.*

¶ 26     For the foregoing reasons, the Fifth District concluded FOIA did not prohibit ISP from releasing to the individual plaintiffs their respective FOID card applications and their denial letters. *Id.* ¶ 32.

¶ 27                    D. The Permanent Injunction Does Not Bar Release

¶ 28     The permanent injunction proffered by ISP as prohibiting disclosure in *Hart* is contained within an agreed order in a matter captioned Illinois State Rifle Ass'n v. Illinois State Police bearing docket No. 11-CH-151 in the Peoria County circuit court. *Id.* ¶ 30. The relevant provisions of the injunction the Fifth District discussed are explicitly based on FOIA, and bar ISP from releasing "personally identifying information" containing "records" that identify those who have applied for and been issued a FOID card, or who have had their application denied or card revoked. *Id.* The order covers information submitted to ISP related to an application, and calls out various identifiers that ISP may not release. *Id.*

¶ 29     The Fifth District rejected ISP's argument the injunction prohibited release to the plaintiffs of their own information because it already found FOIA did not bar release and the trial court entered the order specifically pursuant to FOIA. *Id.* ¶ 31.

¶ 30                                   E. This Case

¶ 31     Here, as the Fifth District decided in *Hart*, we too conclude the trial court properly granted Woolsey's motion for summary judgment and directed ISP to provide him with (1) all documents relating to his application for a FOID card, including his application, (2) ISP's letter denying the application, and (3) any information relating to any disability that would prevent ISP from issuing the card to Woolsey.

¶ 32     Like the plaintiffs in *Hart*, Woolsey asked ISP pursuant to FOIA to provide him with information related to his own application and ISP's denial of his FOID application.

Woolsey's request specified he did not seek information on anyone else's FOID card. As well, the request contained Woolsey's name, city of residence, and social security number. ISP denied Woolsey's FOIA request citing section 7.5(v) of the Act.

¶ 33    ISP asserts FOIA prohibits it from providing Woolsey's own information to him, as does the permanent injunction entered by the Peoria County circuit court. Given this is the same position ISP took in *Hart*, and Woolsey's FOIA request sought generally the same information, we conclude the Fifth District's analysis applies equally here, especially the discussion of the purposeful use of the plural "people" in a manner that excludes the singular person. Accordingly, we find the trial court properly awarded Woolsey his costs and attorney fees.

¶ 34    Our review of FOIA also supports the trial court's conclusion. First, "we are guided by the principle that under the Freedom of Information Act, public records are presumed to be open and accessible." *Lieber v. The Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997). To wit: "All records in the custody or possession of a public body are presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2018). We are directed to read statutory exceptions to this policy narrowly. *Lieber*, 176 Ill. 2d at 407. As also noted above, "Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity." 5 ILCS 140/1 (West 2018).

¶ 35    Second, FOIA provides for the release of personal information if "the disclosure is consented to in writing by the individual subjects of the information." 5 ILCS 140/7(1)(c) (West 2018). The explicit purpose of excluding from release personal information without consent is to prevent "a clearly unwarranted invasion of personal privacy." *Id.* There is no privacy concern if

ISP releases Woolsey's information to him. Such release to Woolsey is consistent with FOIA's general policy of disclosure and its specific language meant to protect an individual's private information.

¶ 36       Lastly, the General Assembly's purpose underlying its enactment of section 7.5(v) of the Act was to protect the privacy of the individual FOID card applicants and holders such that these individuals would not be targets for burglars. Further, the impetus for this provision was an Attorney General opinion that the names of FOID card applicants and holders could be released and a lawsuit between ISP and the Associated Press relative to such release.

¶ 37       Senator Dillard urged passage of the provision as follows:

"Thank you, Madam President and Members. This bill deals with a matter of public policy, that the names of those legitimate firearm owners, who have Firearm Owner's ID Cards, should be exempt from the Freedom of Information Act. The Attorney General—a staffer, issued an advisory opinion that these names of—and there's millions of these individuals who live in our community, should be made public. There is a lawsuit between the State Police and the Associated Press and others pending in Peoria. But as a matter of public policy, I believe that these names should remain private. But, more importantly, every State police director in recent memory, regardless of political party, believes that it is a law enforcement nightmare to have these names released into the public domain, and thus your lawsuit in Peoria, with a former Governor of Illinois representing the Illinois State Police. Obviously, I can argue the constitutional side of this and these names clearly have a constitutional right to be made private—or kept private. But from a law enforcement standpoint, I don't believe we should give burglars a map to

systematically burglarize our neighborhoods and our farms. So, constitutionally, as well as from a law enforcement standpoint, these names should remain public {sic}, but most importantly every State police director, regardless of political party, agrees with me that these names should remain private. I'd be happy to answer any questions." 97th Ill. Gen. Assem., Senate Proceedings, May 20, 2011, at 11 (statements of Senator Dillard).

¶ 38 In the House, Representative Morthland similarly argued:

"Thank you, Mr. Speaker, Members of the House. HB3500 will protect the privacy of law-abiding citizens who either have or have applied for FOID cards and exempt them from having the release of their names and personal information under the Freedom of Information Act. This has been a Bill of some interest and some contention. I appreciate the Attorney General and the work she has done in this matter; however, there is a pressing need to keep this information private. It would create a situation where there would be increased possibility for gun violence in the State of Illinois should this not pass, and so I ask the Members of the House to do so." 97th Ill. Gen. Assem., House Proceedings, April 8, 2011, at 38 (statements of Representative Morthland).

¶ 39 Therefore, requiring ISP to release to Woolsey is consistent with the Act's provisions providing for open records while protecting the privacy of FOID card applicants and holders.

¶ 40 III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the trial court's judgment.

¶ 42 Affirmed.