2017 IL App (2d) 170025
No. 2-17-0025
Opinion filed September 15, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WARREN R. GARLICK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14-CH-2263 |
| | ) | |
| NAPERVILLE TOWNSHIP, | ) | Honorable |
| | ) | Paul M. Fullerton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Warren R. Garlick, sought, under the Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 2016)), from defendant, Naperville Township, an electronic copy of its real-property database in its native file format. The township declined to provide an electronic copy of the database, but it directed plaintiff to its website, where he could search for the records on a parcel-by-parcel basis. 5 ILCS 140/8.5 (West 2016). Plaintiff, *pro se*, filed a complaint for declaratory and injunctive relief, arguing that access to the data on a parcel-by-parcel basis on the website did not constitute reasonable access. See *id.* The trial court granted the township's motion to dismiss. This court reversed and remanded, holding that plaintiff properly pleaded the

reasonable-access claim, which presented a question appropriately addressed in a summary-judgment motion or at trial. *Garlick v. Naperville Township*, 2016 IL App (2d) 150381-U, ¶ 27.

¶ 2     On remand, upon the parties' cross-motions for summary judgment, the trial court denied plaintiff's motion and granted the township's. The court rejected plaintiff's claim that, because industry-wide database standards could be expressed in only a few ways, there was no intellectual-property protection over any database. It also found that two statutory exemptions applied to preclude disclosure of the database in its native file format, because the township's software vendor, JRM Consulting, Inc. (JRM), asserted confidentiality, trade-secret, and copyright claims over its intellectual property. 5 ILCS 140/7(1)(a) (West 2016) (information, such as copyrights or trade secrets, that are prohibited from disclosure by federal or State law); 5 ILCS 140/7(1)(g) (West 2016) (proprietary or confidential trade-secret or financial information, where disclosure would cause competitive harm). Plaintiff, *pro se*, appeals. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                     A. Proceedings Leading to First Appeal

¶ 5     Plaintiff is a resident of River Forest, which is situated in Cook County. The township is a unit of local government situated in Du Page County and a "public body" under the Act. 5 ILCS 140/2(a) (West 2016).

¶ 6     The township assesses all real property within its boundaries, for local taxation purposes. There are about 32,000 real-property records on parcels within its jurisdiction. As part of the assessment process, the township gathers, assembles, and maintains information concerning the valuation and assessment of the parcels. The information is entered into and stored in the database that the township commissioned from JRM.

¶ 7    As part of the database system, a webserver allows the public to retrieve property information *on a parcel-by-parcel basis* from the database. The server does not allow a user to search multiple parcels at one time. Further, a user cannot perform a search based on any other property information on the data-display page, such as property size or age and number of bedrooms or bathrooms. Nor can one perform a collective statistical analysis of the parcels.

¶ 8    On December 4, 2014, plaintiff submitted to the township a request pursuant to the Act (FOIA request). First, he noted that the township's website "enables the public to search for property details based on" parcel numbers and that the details are stored in the database ("most likely [Microsoft] SQL Server or MySQL"). Further, "[p]ursuant to FOIA, I request a copy of this database in its native file format," which "refers to the file format which the application works with during creation, edition or publication of a file."[1]  Second, as to photographs, improvement sketches, and site maps, all of which were in the form of .jpeg files and were not contained in the database, plaintiff sought a copy of the "N07" root or parent directory and all subdirectories, including the .jpeg files stored therein, preserved onto a suitable electronic medium. Plaintiff stated that his request was "nothing more than a simple 'copy and paste' of the database in question to a suitable electronic media (such as a DVD) along with a similar 'copy and paste' of the 'N07' directory and all subdirectories and files beneath that directory."

¶ 9    On December 12, 2014, the township sent plaintiff a letter denying his request. It asserted that, pursuant to section 8.5 of the Act (5 ILCS 140/8.5 (West 2014)), which had been recently enacted, it was no longer required to provide these electronic records in the manner or format that plaintiff had requested, because it had posted the information on its website. It

---

[1] Subsequently, plaintiff clarified that the native file format is the SQL Server format.

directed plaintiff to the website for the data, noting that it consisted of over 32,000 individual property records.

¶ 10    The township further stated:

"The property records software, as currently constituted, is incapable of generating assessment records on a Township-wide basis.  In addition, it is not feasible to provide the records requested, as the Assessor's Office does not have possession of or access to the database in its native file format.  (See 5 ILCS 104/6(a)).  Nor is the Assessor's Office required to create such a file under [the Act].  (See 5 ILCS 140/1)."

The township also stated that, although plaintiff's request was silent on the issue, the township was treating his request as a commercial request.

¶ 11    On December 19, 2014, plaintiff filed against the township his complaint for declaratory and injunctive relief, alleging a violation of the Act.  5 ILCS 140/11(a) (West 2014).  He asserted that his request amounted to "nothing more than a single 'cut and paste' operation, imposing no significant burdens on the Township."  Plaintiff argued that the township was compelling him to launch 32,000 independent web database search queries and to copy and paste each of them into a table of his own creation.  He estimated that such a project would involve over 2,600 hours of his time, which could not have been the General Assembly's intent in enacting section 8.5.  Addressing the township's claim that it could not feasibly provide the requested records, plaintiff asserted that the township possessed and had access to the data, which was stored on its local server at its office and backed up in the "cloud."  He also asserted that copying the database did not constitute the *creation* of a new record that the township had no statutory obligation to provide.

¶ 12    The township moved, under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), to dismiss plaintiff's complaint, arguing that plaintiff failed to state a cause of action under the Act, because: (1) the Act unambiguously no longer required a public body to copy public records that are available online; (2) the undisputed facts showed that plaintiff had reasonable access to the records he requested and that section 8.5 of the Act did not dictate how or in what form records must be posted online; (3) the legislative history supported the township's position; and (4) the Act did not require a public body to spend funds to benefit private individuals, such as by creating, maintaining, or producing records in a specific format. Accordingly, the township sought dismissal with prejudice.  (The motion did not address the township's statement in its denial letter that its software was incapable of generating the records on a township-wide basis or that it did not possess or have access to the database in its native file format.)

¶ 13    After a hearing, the trial court granted the township's motion, finding that: (1) the township complied with section 8.5 of the Act; (2) there were no allegations that any information was unavailable; and (3) "[i]t just requires a little longer format and search, but it is published as required by law."

¶ 14    On appeal, this court reversed and remanded, holding that dismissal was improper because plaintiff stated a claim that the requested records were not reasonably accessible pursuant to section 8.5 of the Act, thus presenting a question appropriately addressed in a summary-judgment motion or at trial. *Garlick*, 2016 IL App (2d) 150381-U, ¶ 27.

¶ 15                              B. Proceedings on Remand

¶ 16    On April 21, 2016, plaintiff moved for summary judgment (735 ILCS 5/2-1005 (West 2016)).  He alleged that the effort required for him to recreate the database—over 2,600 hours of

his time—and the ease with which the township could provide the same were not in contention; the only remaining question was the reasonable-access issue; and the policy behind the Act dictates that requiring him to engage in one year's worth of effort to retrieve the records online fails the reasonable-access threshold.

¶ 17    In its response, the township argued that plaintiff's motion must fail because: (1) plaintiff failed to present any verified pleadings, depositions, admissions, or affidavits to support his claim for summary judgment; and (2) factual and legal issues precluded summary judgment in plaintiff's favor, including that: the township could not provide plaintiff the database in its native file format, because it does not possess the data in that format; plaintiff rejected the spreadsheet the township offered; and, even if the township possessed the database in its native file format, the information plaintiff seeks is protected intellectual property that is exempt from disclosure under the Act.  The township invoked (1) section 7(1)(g) of the Act (5 ILCS 140/7(1)(g) (West 2016)), arguing that disclosure would cause competitive harm to JRM because the data contains proprietary information; (2) section 7(1)(i) of the Act (5 ILCS 140/7(1)(i) (West 2016)), arguing that the request was subject to JRM's claim that the information contains valuable formulae and designs, the disclosure of which could reasonably be expected to produce private gain; and (3) section 7(1)(a) of the Act (5 ILCS 140/7(1)(a) (West 2016)), arguing that, under the federal copyright statute and the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 2016)), it was prohibited from providing the requested information.

¶ 18    The township attached to its response a copy of a May 20, 2016, letter to plaintiff in which it offered to settle the case by providing "the data maintained in the Assessors IMS© program," which JRM maintains and licenses to the township to use and is subject to a software license agreement.  The letter further noted that the township could have the data transferred to a

Microsoft Excel spreadsheet upon payment of $350. The letter noted that, under its license agreement with JRM, the township's use and distribution of the software was restricted by JRM's claim of copyright protection and its claim that the unlicensed disclosure of the data in its native file format violates JRM's proprietary interests in the software. The letter further noted the statutory exemptions.

¶ 19    In a scheduling order dated June 7, 2016, the trial court noted that plaintiff had rejected the township's offer to provide the requested data in an Excel spreadsheet.

¶ 20    On July 6, 2016, the township filed a cross-motion for summary judgment, arguing that (1) it does not possess the database in its native file format and, by requesting the native file format and rejecting the spreadsheet, plaintiff is actually requesting JRM's copyrighted software, which is not a public record under the Act; and (2) even if the township possessed the information as requested, the information is exempt from disclosure under: (a) section 7(1)(g) of the Act, as trade secrets or proprietary confidential information; (b) section 7(1)(i), as containing valuable formulae and designs, the disclosure of which could reasonably be expected to produce private gain; and (c) section 7(1)(a) of the Act, as trade secrets and copyrighted information.

¶ 21    In support of its first argument, the township attached to its motion a July 6, 2016, affidavit from Jerry Marquardt, JRM's president. Marquardt averred that JRM develops and licenses custom software for small- and medium-sized businesses and provides consulting services in connection with the use of its software. The Assessors IMS© program is a mass-appraisal software system that JRM developed and created in 1993. The system is proprietary and copyright-protected, and JRM is its exclusive owner. The software is "designed for the use of real property assessment entities in maintaining, sorting and organizing real property characteristics, data, values and other information associated with real properties located within

their assessment jurisdictions." Marquardt averred that the software and its data files, *in their native file format*, are subject to copyright protection and contain proprietary information, trade secrets, and valuable formulae, including "information on program code, database fields, database names, database schemas and table layouts and are sufficiently secret to derive economic value, actual or potential, from not being generally known to other unauthorized persons who can obtain economic value from their disclosure or use." JRM licensed the township to use the software, subject to certain terms and conditions, including that the township is prohibited from disclosing the data from the software in its native file format and does not possess the native file format. Marquardt averred that the data is translated to the township's website for public reference and that the website does not contain the copyrighted, proprietary, and trade-secret information contained in the software. Marquardt reviewed plaintiff's request, and he determined that disclosing the requested information in its native file format would disclose JRM's protected intellectual property, trade secrets, and proprietary information. JRM did not consent to any such disclosure, which "would cause substantial competitive harm to JRM" because plaintiff or others could use the information for commercial gain. Specifically, plaintiff or others could create a competing software program with similar or identical program code, database fields, database names, database schemas, and table layouts. Finally, he averred that JRM was willing to transfer, for $350, the requested data to a single, sortable electronic database file, such as a Microsoft Excel spreadsheet, "which can be disclosed to Plaintiff without the unauthorized disclosure of JRM's intellectual property, trade secrets or proprietary information in connection with the Assessors IMS© software."

¶ 22    The software license agreement between JRM and the township, which the township also attached to its motion, states that the township:

"has no right to transfer, disclose or otherwise make available the Software, the program code, the database fields, the database names and all data related items to any third parties, the Software, the program code, the database fields, the database names and all data related items being protectable intellectual property.  *** [The township] will not attempt to access or directly access, query or analyze any of the Assessors IMS© database tables using any other means or software which includes but is not limited to the database schemas or any other portions of the Software.  [JRM] maintains all copyrights and other property interests pertaining to the Software and ha[s] the exclusive right to license its use for commercial purposes.  *** [The township] acknowledges and agrees that breach by it of any of the provisions of this agreement could cause irreparable injury to JRM which by its nature would be continuing and substantial, and for which no adequate remedy at law exists."

¶ 23    In his response, plaintiff argued that Marquardt's affidavit was conclusory and should be stricken; that there is no trade-secret protection for the database in its native file format, because the basis for the property tax is widely known to the public; that there is no copyright protection for it, because development of a database follows well-established industry standards such that there is very little variation in databases' schema, tables, and field names; and, alternatively, that plaintiff should be permitted  to depose Marquardt under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013).

¶ 24    Plaintiff also argued that a February 11, 2014, affidavit by Warren Dixon, the township's assessor, which was filed in *another* case, supports his claim that the township possesses the database in its native file format.  In the affidavit, Dixon averred that the township's valuation and assessment of real property includes "gathering, assembling, and maintaining information

related to the property on individual Record Cards in a computerized database." The township hired JRM "to create a custom computer database that is capable of generating" reports; the township inputs information it has gathered into the database; and the township uses the database to generate reports. He further averred, and plaintiff focused on this statement, that the "property information is stored on a local server at the Township Assessor's office and is backed up locally and in the cloud." Dixon also averred that, if a report other than a sales-ratio report, equity report, or new construction/deconstruction report needs to be generated, the township must hire a software company to reprogram the database to generate a new report containing the specific information in question.

¶ 25    On August 3, 2016, plaintiff moved for additional discovery under Rule 191(b), seeking to depose Marquardt "and other [unspecified] persons possessing knowledge of material facts" to show the "falsity of positions" the township articulated in its summary-judgment motion, specifically, the falsity of the claim that responding to plaintiff's request would breach trade-secret and copyright protections. In addition to the depositions, plaintiff sought to propound "interrogatories and request[s] for production of documents" from JRM and the township. Plaintiff attached his affidavit to the motion, averring that the deposition topics would include: (1) the extent to which JRM has incorporated Illinois Department of Revenue guidelines, property-assessment formulas, and other related material into its software; (2) the extent to which JRM has incorporated industry-wide standards common throughout the database-development industry; and (3) all other matters relevant to defeating any claims of trade-secret and copyright protection over the database.

¶ 26    Also in August 2016, the township offered to provide plaintiff with the data in an SQL Server database file and waive the $350 fee. Plaintiff declined.

¶ 27                                    C. Trial Court's Findings

¶ 28    On September 9, 2016, the trial court issued its findings in a 17-page memorandum. First, it addressed plaintiff's summary-judgment motion, wherein plaintiff argued that the township failed to comply with section 8.5 of the Act, because its website did not provide him with reasonable access to its real-property records in their entirety. The trial court found that plaintiff failed to provide evidence supporting his argument that it would take over 2,600 hours to compile the requested data from the website. Accordingly, the court denied plaintiff's motion, determining that there remained a factual question on the reasonableness issue.

¶ 29    Second, the court addressed the township's cross-motion for summary judgment. The court rejected plaintiff's argument that Marquardt's affidavit be stricken as conclusory. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) (summary-judgment affidavits "shall not consist of conclusions but of facts admissible in evidence"). The court noted that the affidavit was made on Marquardt's personal knowledge as JRM's president; he attested to facts, not conclusions; he relied on and referred to the license agreement; he attested that the software and its data in the native file format are subject to copyright and trade-secret protection and contain proprietary information and valuable formulae, including program codes and data fields; he attested that the township has only a license to use the Assessors IMS© program and that it is nontransferable; and he attested that providing the data in its native file format to plaintiff would cause substantial competitive harm in that plaintiff or others could use it for commercial gain. Further, Marquardt stated that he could competently testify if called to do so. The court also found that the facts in Marquardt's affidavit were deemed admitted because plaintiff had filed no counteraffidavit.

¶ 30    Next, the court addressed the township's claim that it should be granted summary judgment because it does not *possess* the database in its native file format *and* because the

database in its native file format, which JRM possesses, *is not a public record*. The court found that, unless an exemption applied, the database in its native file format, which is the format maintained by the township, *is* a public record subject to disclosure, regardless of whether JRM or the township possesses it. See 5 ILCS 140/7(2) (West 2016) (public record possessed not by public body but by party with whom public body has contracted to perform governmental function on its behalf, and that directly relates to such function and is not otherwise exempt, is considered a public record of the public body).

¶ 31    The trial court next turned to the exemptions. Preliminarily, the court found that the township did not forfeit the issue by failing to include them in its denial letter to plaintiff, because the statute mandates that the trial court conduct *de novo* review. See 5 ILCS 140/11(f) (West 2016).

¶ 32    First, the court addressed section 7(1)(g) of the Act, which protects trade secrets and financial information that are proprietary or confidential and disclosure of which would cause competitive harm. The court pointed to Marquardt's affidavit and the license agreement, which reflected that JRM allowed the township to use the software in exchange for the township treating it as confidential and protectable intellectual property. The court found that, since disclosure would have a chilling effect upon the township's subsequent ability to receive helpful software or tools from similar companies, the database in its native file format was exempt from disclosure under section 7(1)(g). The court noted that the fact that the basis for taxation is widely known under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2016)) did not preclude a finding that the software is proprietary or that the database in its native file format is a trade secret and contains confidential and proprietary information. Further, the court noted that

plaintiff had not provided a counteraffidavit or other evidence to support his "blanket" argument that the basis for taxation is widely known.

¶ 33    Next, the court addressed section 7(1)(i) of the Act, which protects valuable formulae and designs "when disclosure could reasonably be expected to produce private gain or public loss." 5 ILCS 140/7(1)(i) (West 2016).  The court declined to grant summary judgment as to this exemption, finding that the issues of private gain and public loss presented factual questions here.  The court noted, however, that Marquardt's affidavit and the license agreement demonstrated that the database, in its native file format, includes valuable formulae and designs the disclosure of which could reasonably be expected to produce public loss because, under the license agreement, JRM could terminate the township's right to use the software and JRM could bring a breach-of-contract claim against the township.

¶ 34    As to section 7(1)(a) of the Act, which protects information—such as trade secrets and copyrights—prohibited from disclosure by federal or state law, the trial court found that: (1) because the Trade Secrets Act precludes disclosure of the database in its native file format (because JRM has not consented to disclosure and the township has a contractual duty to maintain secrecy under the license agreement), the exemption applies.  The court rejected plaintiff's arguments that (1) the basis for taxation is widely known, noting that plaintiff had not provided a counteraffidavit or other evidence; and (2) because industry-wide database standards could be expressed in only a few ways, the court should invoke the "merger doctrine," which dictates that, if there is only one feasible way to express an idea, the expression is not protected by federal copyright law.  The court found that the merger doctrine does not apply, because there is not only one feasible way of creating the software and formatting work such as table layouts. The exemption applies because JRM is the exclusive owner of the software containing the

original program code and table layouts, which are subject to copyright law, and is the only party that can distribute it to the public.

¶ 35    Finally, the trial court denied plaintiff's motion for additional discovery, finding that plaintiff's affidavit lacked the necessary disclosures under Rule 191(b). Specifically, plaintiff failed to allege that Marquardt is the only person with knowledge of any material facts and failed to allege what he believed Marquardt would testify to, and plaintiff essentially challenged the validity of JRM's copyright and trade-secret protections, which is "far afield from" the issues in this case and for which the trial court is not an appropriate forum.

¶ 36    In summary, the trial court denied plaintiff's summary-judgment motion, denied his motion for additional discovery, and granted the township's summary-judgment motion.

¶ 37    On September 12, 2016, the trial court set the case for hearing "as to reasonableness of making the information available [online], in Excel [s]preadsheet format or SQL Server format."

¶ 38    On September 20, 2016, plaintiff moved for clarification on: whether the hearing would include the factual issue of public loss/private gain; the burden of proof as to reasonable access; and the extent of the data encompassed by the reasonable-access inquiry (*i.e.*, the data published online versus all public data within the database). He attached printouts of, among other things, Department of Revenue publications and Marquardt's emails to at least two other townships.

¶ 39    The township also moved for clarification of the court's September 12, 2016, order, noting that the court's findings on September 8, 2016, were that the database in its native file format was exempt from disclosure under sections 7(1)(g) and 7(1)(a) of the Act and, thus, no issues remained pending (or they were rendered moot). As to the reasonable-access issue, the township argued that the issue was moot because: (1) plaintiff never tried to retrieve the records online; and (2) the township no longer claimed that plaintiff's request can be satisfied by the

online database. Further, it noted that it had offered plaintiff all of the information contained in the requested records, in two different comparable formats. He could, it suggested, reformat his request and "probably be entitled to receive some records from" the township. The township reiterated that it was willing to provide plaintiff with the information in an Excel spreadsheet, an SQL Server database file, or some other reasonable format, so long as it did not contain JRM's proprietary information. Thus, the township argued, no factual issues remained to be resolved, because plaintiff could either make a new FOIA request, accept the township's offer, or appeal.

¶ 40   Plaintiff responded that the reasonable-access issue was not moot merely because the township had changed its position (presumably to avoid the imposition of civil penalties), also noting that attorney fees had not been adjudicated. He also argued that the imposition of a $350 transfer fee violated the Act, where his request was not for commercial purposes, and that an Excel spreadsheet was not the format in which he requested the data. Finally, plaintiff argued that any ruling must include all of the disclosable public data within the database (which consists, he stated, of considerably more data than is published online). He asserted that: (1) he did not seek program code, which is protected; (2) the source of any valuable formulae is the Department of Revenue and such data is not protected; (3) database fields, names, and schemas and table layouts are not protected, because they are based on industry-wide database standards and thus can be considered ideas (which, unlike expressions of ideas, are not copyrightable), because the standards dictate *so few ways* of expressing these ideas; and (4) protecting the expression of the ideas in this case would effectively accord protection to the ideas themselves and confer a monopoly over them, in contravention of the Act. Finally, plaintiff argued that the township had not proposed how proprietary information can be extracted without rendering the database unusable, "given that the very elements that the Township alleges are proprietary

information are integral to the database itself and have arisen from the dictates of database industry standards."

¶ 41    On January 10, 2017, the trial court clarified that its September 9, 2016, order granted summary judgment to the township "in full," for the reasons stated in the original memorandum and order on the same date and for the "reasons stated on the record today."[2]   It further found that its order was final and appealable and that the "hearing as to 'reasonableness' will not proceed."  Plaintiff appeals.

¶ 42                                       II. ANALYSIS

¶ 43    Plaintiff argues that the trial court erred in granting summary judgment to the township and requests that we reverse and remand for further proceedings.  For the following reasons, we conclude that the trial court correctly found that the exemption under section 7(1)(a) of the Act, for trade secrets and copyrights, precludes the disclosure of the database in its native file format.

¶ 44    Summary judgment may be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c)

---

[2] At the hearing, the court commented that "what got lost" in its September 8, 2016, decision was that plaintiff requested the information only in its native file format.  The court clarified that there were no remaining material factual questions.  "[W]hat I should have done is granted summary judgment in full" to the township.  It also found moot plaintiff's motion for clarification.  The court reiterated that it had determined that the township does not have to provide the database in its native file format.  Thus, plaintiff could: (1) revise his FOIA request; (2) retrieve the records online; (3) accept the township's proposal; or (4) appeal.  Also at this hearing, plaintiff clarified that "native file format" means SQL Server format.

(West 2016). "In making this determination the pleadings, depositions, admissions, exhibits, and affidavits are to be construed strictly against the movant and liberally in favor of the opponent." *Delaney Electric Co. v. Schiessle*, 235 Ill. App. 3d 258, 263 (1992). "In addition, the court must draw all reasonable inferences from the record in favor of the nonmoving party." *Id.* However, although the court may draw inferences from undisputed facts, summary judgment should be denied where reasonable persons can "draw divergent inferences from undisputed facts." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review *de novo* summary-judgment rulings. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993). Further, whether an exemption applies under the Act is a question of statutory construction, which we review *de novo*. *City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870, ¶ 13. We also review *de novo* a ruling on a motion to strike an affidavit made in conjunction with a summary-judgment ruling. *Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001).

¶ 45    Plaintiff's data request was as follows: noting that the township's website "enables the public to search for property details based on" parcel numbers and that the details are stored in a database ("most likely SQL Server or MySQL"), "[p]ursuant to FOIA, [he] request[ed] a copy of this database in its native file format," which "refers to the file format which the application works with during creation, edition or publication of a file."[3] The township maintains that its offer, which plaintiff has rejected, to provide the *contents* of the database in SQL server format, without any fee. But it seeks to protect the *software* in which the contents are maintained, and it

_____

[3] Plaintiff's also sought .jpeg files in the root directory and subdirectories. To the extent that these files are distinct from the property details in the database, we find any arguments concerning the files forfeited because plaintiff does not specifically address them on appeal.

notes that this software is provided under the license agreement and is copyrighted and furnished under a claim that it is proprietary and confidential.

¶ 46                                    A. Preliminary Issues

¶ 47    First, we address several preliminary issues.  Plaintiff argues that the township should have been barred from raising the exemptions in its summary-judgment motion.  He asserts that the township forfeited the exemptions by failing to raise them earlier in the proceedings, specifically, when it moved to dismiss plaintiff's complaint.  He suggests that the township should have filed a section 2-619.1 motion to dismiss (735 ILCS 5/2-619.1 (West 2014)), raising the exemptions as affirmative matter under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) West 2014)).[4]  According to plaintiff, the township obtained a second and impermissible *de novo* review after remand.  See 5 ILCS 140/11(f) (West 2016) ("In any action considered by the court, the court shall consider the matter *de novo*, and shall conduct such *in camera* examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act." (Emphasis added.)).  This, he argues, runs counter to the public policy underlying the Act, which encourages prompt disclosure and prioritizes some cases.  5 ILCS 140/1, 11(h) (West 2016).  We disagree.  A party may file a summary-judgment motion at any time, even before filing an answer, and an affirmative matter may be raised in the motion even though it was not raised in an answer.  See, *e.g.*, *Falcon Funding, LLC v. City of Elgin*, 399 Ill. App. 3d 142, 156 (2010); *Metropolitan Sanitary District v. Anthony Pontarelli & Sons, Inc.*, 7 Ill. App. 3d 829, 838 (1972); see also 735 ILCS 5/2-1005(a), (b) (West 2016) ("[a]ny time after the opposite party has appeared ***, a plaintiff may move *** for summary

---

[4] Plaintiff states in his brief that he is *not* arguing that the township forfeited the exemptions by not including them in its denial letter.

judgment"; a "defendant may, at any time, move *** for summary judgment"). Further, the filing of a combined motion under section 2-619.1 is optional, not mandatory. See 735 ILCS 5/2-619.1 (West 2016) ("Motions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619, and motions for summary judgment under Section 2-1005 *may* be filed together as a single motion in any combination." (Emphasis added.)). Plaintiff cites no case law and relies merely on the Act's general policy. We believe that, had the legislature, in enacting the Act and specifying its general goals, intended to supplant the Code's pleading options, it would have explicitly done so. Finally, we note that nowhere in this court's decision in the first appeal did we limit the proceedings or available defenses on remand.

¶ 48    Next, plaintiff argues that the trial court did not adequately address the data stored within the database but not published online. He contends that, via FOIA requests to other townships that license the JRM software (which he submitted with his motion for clarification, though without any affidavits from the individuals who forwarded him the information), he has been able to ascertain that there is "substantially more" data stored within the database than is published online. This data, he notes, is in keeping with the Property Tax Code's requirements. Plaintiff contends that the township refuses to disclose this data on the basis that doing so would violate JRM's trade-secret and copyright protections. Plaintiff argues that this premise turns FOIA on its ear and that, even assuming that JRM has a copyright claim to the database, it cannot use copyright law to prevent disclosure on the ground that the public data is so inextricably intertwined with the copyrightable elements of its design that the public data cannot be extracted without revealing these copyrightable elements. He relies on *Assessment Technologies of WI, LLC v. WIREdata*, 350 F.3d 640 (7th Cir. 2003), to support this claim. We

conclude that plaintiff's argument fails because the township has offered to provide all of the contents of the database, excluding the software. And we note that, to the extent that the contents include more information than is available via the website, this satisfies plaintiff's request. The township has refused to disclose not any public records, but only the software that it claims is protected intellectual property. In *Assessment Technologies*, a copyright-infringement case, not an open-records case, the plaintiff copyright owner of a database sued the defendant, seeking to protect *non*copyrighted data (specifically, property assessment data that was in the public domain) in the database by blocking the defendant from obtaining it from the plaintiff's licensees, which were several Wisconsin municipalities that collected the raw data in the database. The plaintiff argued that the data could not be extracted without infringing on its copyright for the database. The court rejected the plaintiff's claim, holding that the data was beyond the scope of the plaintiff's copyright, because data is not copyrightable. *Id.* at 646-47. The court listed several ways in which the defendant could obtain the data without infringing on the plaintiff's copyright and noted that the method would be selected by each municipality, "in light of applicable trade-secret, open-records, and contract laws." *Id.* at 647. The court cautioned that the plaintiff would have lost the case even if the raw data could not be extracted without making a copy of the program. *Id.* at 644. This was so because the purpose of copying would be limited to extracting only noncopyrighted material. *Id.* at 645.[5] Here, plaintiff

---

[5] Further, in rejecting the defendant's argument that the plaintiff's database was insufficiently original to be copyrightable, the *Assessment Technologies* court noted that, in contrast to patent law, copyright law "does not require substantial originality," but "only enough to enable a work to be distinguished from similar works that are in the public domain." *Id.* at 643. The database at issue satisfied the "modest requirement *** because no other real estate

contends that *Assessment Technologies* stands for the proposition that a party cannot use copyright law to prevent disclosure of public data on the ground that the data is inextricably intertwined with the copyrightable elements of a program's design. We fail to see how that point is relevant here. Again, the township has refused to disclose not any public records, but only the software that JRM claims is protected intellectual property. Plaintiff rejected the township's offer to provide the *contents* of the database in SQL server format.

¶ 49 Next, plaintiff argues that Marquardt's affidavit is conclusory and thus should have been stricken. He also contends that Marquardt's deposition *in another case* "raises serious questions" that warrant "a clearer explanation." We reject these arguments. The trial court correctly found that the affidavit is not conclusory and refused to strike it. Marquardt averred that JRM develops and licenses custom software for small- and medium-sized businesses and provides consulting services in connection with the use of its software. The Assessors IMS© program is a mass-appraisal software system that JRM developed and created in 1993. The system is proprietary and copyright-protected, and JRM is its exclusive owner. The software is "designed for the use of real property assessment entities in maintaining, sorting and organizing real property characteristics, data, values and other information associated with real properties located within their assessment jurisdictions." Marquardt averred that the software and its data files, in their native file format, are subject to copyright protection and contain proprietary information, trade secrets, and valuable formulae, including "information on program code,

---

assessment program arranges the data collected by the assessor in these 456 fields grouped into these 34 categories, and because this structure is not so obvious or inevitable as to lack the minimal originality required, [citation], as it would if the compilation program simply listed data in alphabetical or numerical order." *Id.*

database fields, database names, database schemas and table layouts and are sufficiently secret to derive economic value, actual or potential, from not being generally known to other unauthorized persons who can obtain economic value from their disclosure or use." JRM licensed the township to use the software, subject to certain terms and conditions, including that the township is prohibited from disclosing the data from the software in its native file format and does not possess the native file format. Marquardt averred that the data is translated to the township's website for public reference and that the website does not contain the copyrighted, proprietary, and trade-secret information contained in the software. Marquardt reviewed plaintiff's request, and he determined that disclosing the requested information in its native file format would disclose JRM's protected intellectual property, trade secrets, and proprietary information. JRM did not consent to any such disclosure, which "would cause substantial competitive harm to JRM" because plaintiff or others could use the information for commercial gain. Specifically, plaintiff or others could create a competing software program with similar or identical program code, database fields, database names, database schemas, and table layouts. A "public body can meet its burden [to show that an exemption applies] only by providing some *objective* indicia that the exemption is applicable under the circumstances." (Emphasis in original.) *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 470 (2003). Affidavits can satisfy this burden, unless they are "conclusory, merely recite statutory standards, or are too vague or sweeping." *Id.* at 469. We conclude that the trial court did not err in finding that Marquardt's affidavit is not conclusory, vague, or sweeping. He sufficiently provided detailed objective facts concerning his company's software and his claims that the software is proprietary and protected. Plaintiff offered no counteraffidavit or other evidence to raise a material factual issue concerning the application of the exemptions.

¶ 50    Plaintiff's reliance on Marquardt's deposition in *another* case is misplaced.  He contends that Marquardt's deposition responses in that case were "an exercise in futility and obstruction," because Marquardt's attorney objected to "the majority of the questions" on the grounds that answering them would reveal proprietary information.  We find these responses consistent with the township's position here that it is precluded by the license agreement from disclosing JRM's proprietary information.  Plaintiff fails in his attempt to characterize this position as obstructive and a basis for striking the affidavit.

¶ 51    Plaintiff also argues that Marquardt was unable to competently testify to any economic loss JRM would suffer from the release of the database in its native file format.  He points to Marquardt's statement that the unauthorized and unlicensed disclosure of the database in its native file format would cause JRM substantial competitive harm.  Next, plaintiff points to Marquardt's deposition testimony in the other case, wherein he stated that he had "no idea" of the economic value a party could derive from making the data available to the public.  Assuming that consideration of the deposition is proper, we reject plaintiff's argument, because we do not believe that Marquardt was required to identify the particular economic value.

¶ 52    Next, plaintiff sought to depose Marquardt and other unspecified persons and asserted that they possessed "information demonstrating the *falsity* of positions articulated in" the township's summary-judgment motion and Marquardt's affidavit, specifically, the trade-secret and copyright claims.  The trial court denied the motion, finding that plaintiff's affidavit violated Rule 191(b), by stating only generally that he sought to depose knowledgeable persons, and that plaintiff inappropriately sought to challenge the validity of JRM's copyright and trade-secret claims, which "is far afield from what is at issue" here.  As we address below, we agree with the trial court's findings and conclude that proceedings under the Act are not avenues by which to

challenge the validity of trade-secret and copyright claims and that the trial court and this court are not proper forums in which to challenge a copyright.

¶ 53                                    B. Exemption

¶ 54     Having resolved the preliminary matters, we turn to the merits. Plaintiff argues that section 7(1)(a)'s exemption for trade secrets and copyrights does not apply to preclude disclosure of the requested information. For the following reasons, we conclude that the trial court did not err in finding that the exemption applies.[6] We conclude that plaintiff's arguments essentially challenge the validity of JRM's trade-secret and copyright claims and that proceedings under the Act are not the proper mechanism to challenge such claims and, further, that this court is not the proper forum in which to challenge a copyright claim.

¶ 55     Under the Act, Illinois has established a public policy that all "persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them." 5 ILCS 140/1 (West 2016); see also *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989) (statute's purpose is "to open governmental records to the light of public scrutiny"). Courts liberally construe the Act to achieve the goal of "provid[ing] the public with easy access to government information" *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006). The Act also provides that "[r]estraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the

---

[6] Because we affirm on this basis, we need not address the other exemptions the trial court addressed.

people." 5 ILCS 140/1 (West 2016). Thus, the Act's exemptions are narrowly construed. *Janssen Pharmaceuticals*, 2017 IL App (1st) 150870, ¶ 15.

¶ 56 The statute also provides: "This Act shall be the exclusive State statute on freedom of information, except to the extent that other State statutes might create additional restrictions on disclosure of information or other laws in Illinois might create additional obligations for disclosure of information to the public." 5 ILCS 140/1 (West 2016).

¶ 57 "A database is an aggregation of data, not a discrete document." *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836, ¶ 71. It "is akin to a file cabinet, and the data that populates the database is like the files. [The Act] permits a proper request for a single file, some of the files, or all of the files." *Id.* "A public body may even be compelled to turn over an entire database to the extent that the information is not exempt from disclosure." *Id.* ¶ 36.

¶ 58 Section 7(1)(a) of the Act provides that the following "shall be exempt from inspection and copying":

"(a) Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." 5 ILCS 140/7(1)(a) (West 2016).

The relevant laws here are, again, the Trade Secrets Act and federal copyright law.

¶ 59 The trial court determined that the Trade Secrets Act precludes disclosure of the database in its native file format, because JRM has not consented to disclosure and the township has a contractual duty under the license agreement to maintain the secrecy of the database. The court also found that federal copyright law precluded disclosure.

¶ 60 Plaintiff acknowledges, and we agree, that the proprietary nature of the JRM software has been somewhat conflated with an SQL Server database storing the publicly disclosable property

data to argue that the database format, *per se*, is a proprietary file format developed by JRM, not Microsoft. However, it remains that plaintiff's arguments essentially challenge the township's (and JRM's) claims that the Assessors IMS© program is a trade secret and copyrighted. For this reason, the arguments lack merit because challenges to the validity of trade-secret or copyright claims are not proper proceedings under the Act. Further, this court is not the proper forum for copyright claims. Plaintiff expends many pages of his briefs addressing whether the formulae in JRM's software are widely known and in the public domain, arguing that the formulae cannot be subject to trade-secret or copyright protection. But, again, proceedings under the Act are not the proper mechanism and this court is not the proper forum in which to raise such challenges. Further, as the trial court found, plaintiff provided no counteraffidavit or other evidence to support his claim that, for example, the basis for taxation is widely known.

¶ 61 As the township notes, JRM's trade-secret and copyright claims do not extend to any *data* that has been entered into the database using JRM's software. That is, the data concerning the real property that the township assesses is not protected and has been offered to plaintiff in the form of a sortable spreadsheet such as an Excel or an SQL Server database file, not including JRM's software. Plaintiff claims on appeal that he is not seeking the software, but asking only for a copy of the SQL Server database file that contains the publicly disclosable property data. This apparently was the file that the township offered, and plaintiff offers no explanation as to why he rejected it. Instead, he raises challenges to JRM's intellectual-property claims, and they are unavailing.

¶ 62                                III. CONCLUSION

¶ 63 For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 64 Affirmed.