# Illinois Official Reports

## Appellate Court

---

***Timpone v. Illinois Student Assistance Comm'n*, 2019 IL App (1st) 181115**

---

| | |
|---|---|
| Appellate Court Caption | BRIAN TIMPONE, Plaintiff-Appellee, v. THE ILLINOIS STUDENT ASSISTANCE COMMISSION, Defendant-Appellant. |
| District & No. | First District, Third Division<br>No. 1-18-1115 |
| Filed | December 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-0011386; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Mary C. Labrec, Assistant Attorney General, of counsel), for appellant.<br><br>James J. McQuaid and Jeffrey M. Schwab, of Liberty Justice Center, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1        Brian Timpone filed a Freedom of Information Act (FOIA) (5 ILCS 140/3(a) (West 2014)) request with the Illinois Student Assistance Commission (ISAC or commission) to obtain the names of all students who received grants in 2015 through the State's Monetary Award Program (MAP), as well as the name of the college or university that each student attended. ISAC routinely distributes statistics that include the name of every school where MAP grants are disbursed, the number of grants, total dollars, and mean recipient income per institution, as well as details about the grants. ISAC cited privacy concerns for withholding the student names from Timpone but produced a spreadsheet aggregating the 2015 MAP grants by city and detailing the total dollar amount and number of recipients for each location. Timpone then filed an action in the circuit court of Cook County to compel the public disclosure of each student's name (see 5 ILCS 140/11(a) (West 2014)), and there he prevailed on cross-motions for summary judgment. The commission appeals the determination that it "improperly" withheld the information and argues that together section 7(1)(a) of FOIA and section 2700.55 of the commission's regulations exempt public disclosure of "personally identifiable information" (5 ILCS 140/7(1)(a) (West 2014); 23 Ill. Adm. Code 2700.55 (2014)) and that section 7(1)(b) of FOIA exempts public disclosure of "[p]rivate information" (5 ILCS 140/7(1)(b) (West 2014)). In the event we find either of ISAC's exemption arguments persuasive, we would vacate not only the circuit court's October 2017 summary judgment order but also its May 2018 decision to award Timpone $10,478 based on the FOIA language that entitles a person who "prevails in a proceeding under this Section" to an award of his or her reasonable attorney fees and costs. 5 ILCS 140/11(i) (West 2014). Enforcement of the circuit court orders has been stayed pending this appeal.

¶ 2        ISAC's timely filing of a notice of appeal on May 31, 2018, complied with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015). Accordingly, we have jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 3        ISAC administers the financial grant program known as MAP pursuant to the Illinois Higher Education Student Assistance Act. See 110 ILCS 947/35, 20(f) (West 2014); *What is MAP*?, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/about.html (last visited Dec. 3, 2019) [https://perma.cc/6T64-VM39]. MAP grant money may be offered to residents of Illinois and citizens or permanent residents of the United States who are "deterred by financial considerations" from completing their postsecondary education. 110 ILCS 947/35(a) (West 2014). Initial eligibility is entirely need-based and does not take into account high school grades or test scores, but grant renewals are conditioned on good academic standing. *What is MAP*?, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/about.html (last visited Dec. 3, 2019) [https://perma.cc/6T64-VM39]; 110 ILCS 947/35(b)(1)-(3) (West 2014).

¶ 4        Students apply for various forms of financial aid, including MAP grants, by disclosing their financial details, as well as their parents' or spouse's financial details, to the United States Department of Education (DOE) on the Free Application for Federal Student Aid form, which is commonly known as FAFSA. *What is MAP?*, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/about.html (last visited Dec. 3, 2109) [https://perma.cc/6T64-VM39]; see also 23 Ill. Adm. Code 2735.30(a), amended at 37 Ill. Reg. 9528 (eff. July 1, 2013); *Dependency Status*, Ill. Student Assistance Comm'n, https://www.isac.org/students/

before-college/financial-aid-planning/completing-the-fafsa/dependency-status.html (last visited Dec. 3, 2019) [https://perma.cc/2XM3-ZYNB]. ISAC's website indicates that "[a]pplicants are automatically considered to be dependent students for financial aid purposes (meaning financial aid eligibility will be determined including parent information) unless they meet the federal definition of an independent student." *Dependency Status*, Ill. Student Assistance Comm'n, https://www.isac.org/students/before-college/financial-aid-planning/completing-the-fafsa/dependency-status.html (last visited Dec. 3, 2019) [https://perma.cc/2XM3-ZYNB]. DOE then shares the individual or family financial data with ISAC. *What is MAP?*, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/about.html (last visited Dec. 3, 2109) [https://perma.cc/6T64-VM39]. Students who list an approved Illinois college on their FAFSA are "automatically" considered for MAP grants. *How to Apply*, Ill. Student Assistance Comm'n, https://www.isac.org/students/during-college/types-of-financial-aid/grants/monetary-award-program/index.html#How_to_Apply) (last visited Dec. 3, 2019) [https://perma.cc/KKT3-Y3EP].

¶ 5      Each student may be granted up to $6468 per academic year (110 ILCS 947/35(c)(1) (West 2014)) but MAP funds are "apportioned among otherwise eligible applicants on the basis of relative financial resources and available funds" (23 Ill. Adm. Code 2735.10(a) (1998) (summary and purpose of MAP)). In the last five years, "more than 600,000 Illinois students received over $1.8 billion in MAP grants to help them attend college." *What is MAP?*, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/about.html (last visited Dec. 3, 2019) [https://perma.cc/6T64-VM39].

¶ 6      ISAC routinely divulges detailed statistics about MAP disbursements and the recipients of those funds. ISAC maintains an annual "Data Book" on its website in which the State agency specifies each year's appropriation history and the formula used to grant or deny that year's applications. See, *e.g.*, *2015 Data Book*, Ill. Student Assistance Comm'n, https://www.isac.org/e-library/research-policy-analysis/data-book/2015-data-book.html (last visited Dec. 3, 2019) [https://perma.cc/JB7B-4NC9]. ISAC also compiles numerous tables of statistics about each year's disbursements. MAP disbursements are, for instance, reported in the Data Book by type of educational program, including all schools, public four-year institutions, private nonprofit institutions, and so forth. See *2015 Data Book*, Ill. Student Assistance Comm'n, https://www.isac.org/e-library/research-policy-analysis/data-book/2015-data-book.html (last visited Dec. 3, 2019) [https://perma.cc/JB7B-4NC9]. ISAC then specifies each institution's tuition and fees, MAP receipts, average award, and number of MAP recipients. See *2015 Data Book*, Ill. Student Assistance Comm'n, https://www.isac.org/e-library/research-policy-analysis/data-book/2015-data-book.html (last visited Dec. 3, 2019) [https://perma.cc/JB7B-4NC9]. ISAC also discloses the mean income per recipient and the mean income per denied applicant at each school. Ill. Student Assistance Comm'n, Average Income by Dependency Status, http://www.isac.org/e-library/research-policy-analysis/data-book/documents/2015-data-book/2015DataBookTable2.3d.pdf (last visited Dec. 3, 2019) [https://perma.cc/EKT6-MWFX]. The tables for fiscal year 2015 indicate, for instance, that the mean income of parents of all eligible dependent students was $30,652 and the mean income of parents whose dependent children used MAP dollars to attend public four-year schools was $33,098. Ill. Student Assistance Comm'n, Average Income by Dependency Status, http://www.isac.org/e-library/research-policy-analysis/data-book/documents/2015-data-book/2015DataBookTable2.3d.pdf (last visited Dec. 3, 2019) [https://perma.cc/EKT6-MWFX]. Within the data about

public four-year schools, it is disclosed that parents whose dependent children used MAP dollars to attend University of Illinois-Urbana had a mean income of $38,170 and parents whose dependent children used MAP dollars to attend Chicago State University had a mean income of $20,682. Ill. Student Assistance Comm'n, Average Income by Dependency Status, http://www.isac.org/e-library/research-policy-analysis/data-book/documents/2015-data-book/ 2015DataBookTable2.3d.pdf (last visited Dec. 3, 2019) [https://perma.cc/EKT6-MWFX]. The corresponding income figures for independent students receiving MAP grants in fiscal year 2015 were $16,268 for all recipients, $14,610 for recipients who attended public four-year schools, $9338 for recipients who attended University of Illinois-Urbana, and $12,575 for recipients who attended Chicago State University. Ill. Student Assistance Comm'n, Average Income by Dependency Status, http://www.isac.org/e-library/research-policy-analysis/data-book/documents/2015-data-book/2015DataBookTable2.3d.pdf (last visited Dec. 3, 2019) [https://perma.cc/EKT6-MWFX]. Thus, ISAC publicly discloses how it handles MAP dollars, and it divulges detailed data about the income of MAP grant recipients.

¶ 7        In May 2016, Timpone submitted a FOIA request by e-mail, seeking the name of every student who received a 2015 MAP grant, as well as the name of his or her college or university and home address. After ISAC declined to disclose "private information" or "personal financial information," Timpone amended his request to seek the home cities or zip codes of each student, rather than his or her home address. We note that it was unclear from Timpone's e-mail whether he meant to abandon his request for the students' names, however, ISAC construed Timpone's response as a decision to forgo that portion of his initial request. Timpone subsequently asked whether ISAC would "separate out" the high schools attended by the recipients, stating that it "[w]ould be great to have that too," but that he would "take zip if it is all that is possible." ISAC then generated a spreadsheet in excess of 50 pages aggregating the 2015 MAP grants by city and disclosing the total dollar amount and number of recipients in each location. In June 2016, Timpone objected to the fact that the spreadsheet he received did not include the student names. ISAC reiterated the basis for its denial, specifying that MAP was a financial need-based program and that student names had been obtained by ISAC through "the FAFSA[,] which is private."

¶ 8        Later that year, Timpone filed the complaint at issue in which he sought individual student names, and ISAC filed its answer and affirmative defenses citing various federal and State provisions ISAC contended exempted the information from disclosure to the public. The parties next filed motions for summary judgment, which the circuit court resolved in Timpone's favor. The parties also filed cross-motions for reconsideration, in which Timpone sought the addition of zip codes and high school names (that is, seeking information mentioned in his e-mails to ISAC but not included in his circuit court complaint), and ISAC argued for reversal of the summary judgment ruling. Timpone also filed a motion for attorney fees and costs. The circuit court denied the parties' cross-motions for reconsideration but granted Timpone's fee petition. ISAC contends here that the judgment and fee award were in error.

¶ 9        Relevant to our analysis is that, under FOIA, public records are presumed to be open and accessible to the light of public scrutiny. *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836, ¶ 53, 56 N.E.3d 1049 (citing *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405, 910 N.E.3d 85, 91 (2009)); 5 ILCS 140/1.2 (West 2014) ("[a]ll records in the custody or possession of a public body are *** open to inspection or copying"). The term "public records" is broad and includes "all records *** having been

- 4 -

prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014). Furthermore, it is "a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." 5 ILCS 140/1 (West 2014). As ISAC is one of the "commissions of this State," it is a "[p]ublic body" whose records are subject to FOIA's disclosure requirements (see 5 ILCS 140/2(a) (West 2014) (" 'Public body' means *** commissions of this State ***.")) and it has not been disputed by ISAC that MAP data is a "public record[ ]" within the meaning of FOIA. 5 ILCS 140/2.5 (West 2014). Thus, this appeal turns on whether the Illinois legislature exempted ISAC's MAP records from the presumption that they will be disclosed upon request.

¶ 10     A public body is required to comply with a valid request for information, unless the information comes within one of the narrow statutory exemptions set out in FOIA's section 7. *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 13, 980 N.E.2d 733.

> "Restraints on access to information, to the extent permitted by [FOIA], are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people." 5 ILCS 140/1, 3(a) (West 2014).

FOIA "shall be construed in accordance with this principle." 5 ILCS 140/1 (West 2014). FOIA is, therefore, to be read "liberally *** in order to provide the public with easy access to government information" and the exceptions to disclosure set out in the statute "are to be interpreted narrowly so as not to defeat FOIA's purpose." *Hites*, 2016 IL App (2d) 150836, ¶ 53; *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559 (1989) ("FOIA is to be given a liberal construction").

¶ 11     Nevertheless, FOIA "may not be used to violate individual privacy rights," and the courts are vigilant in this regard. *Watkins*, 2012 IL App (1st) 100632, ¶ 13 (where inmate alleged his confession had been coerced by police officers, the court distinguished between police personnel records, which are exempt from disclosure, and police misconduct allegations, which are not necessarily exempt from disclosure); 5 ILCS 140/1 (West 2014) (FOIA "is not intended to cause an unwarranted invasion of personal privacy"); *Bowie*, 128 Ill. 2d at 378 ("the court must be vigilant against invasions of privacy").

¶ 12     When a requesting party challenges the public body's denial of a FOIA request, as Timpone has done here, the public body bears the burden of demonstrating that the requested records are exempt. *Watkins*, 2012 IL App (1st) 100632, ¶ 13; 5 ILCS 140/1.2 (West 2014) ("Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt."). In order to meet this burden and assist the court in its analysis, the public body must detail its justification for its claimed exemption. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408, 680 N.E.2d 374, (1997).

¶ 13     This court reviews *de novo* whether ISAC's denial is proper. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶¶ 25-26, 8 N.E.3d 11. The *de novo* standard also governs when we review the interpretation of statutes and the entry of summary judgment. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30, 106 N.E.3d 1016; *Stern*, 233 Ill. 2d at 404.

¶ 14     When presented with statutory questions, we are "to ascertain and give effect to the true intent of the legislature" by giving the statutory language "its plain, ordinary and popularly understood meaning." *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶¶ 20-21, 30 N.E.3d 288. Courts must not to depart from the legislature's plain language and meaning of its statute by reading in exceptions, limitations, or conditions that the legislature did not express. *Illinois State Treasurer*, 2015 IL 117418, ¶ 21.

¶ 15     "Courts construe administrative rules and regulations under the same principles that govern the construction of statutes." *Perez v. Illinois Department of Children & Family Services*, 384 Ill. App. 3d 770, 772, 894 N.E.2d 447, 450 (2008).

¶ 16     It is appropriate to enter summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); *Perry*, 2018 IL 122349, ¶ 30; *Stern*, 233 Ill. 2d at 404.

¶ 17     This case involving the version of FOIA in effect in 2015 presents a unique set of facts because the statutory language has undergone multiple revisions. This court determined that the language in effect in the 1990s did not permit the public disclosure of student names and home address. See *Gibson v. Illinois State Board of Education*, 289 Ill. App. 3d 12, 683 N.E.2d 894 (1997). That version of FOIA generally exempted " '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy' " and specifically exempted " 'files and personal information maintained with respect to *** students *** receiving *** educational [or] financial *** care or services directly or indirectly from federal agencies or public bodies.' " *Gibson*, 289 Ill. App. 3d at 15-16 (quoting 5 ILCS 140/7 (West 1994)). However, different language was in effect when Timpone made his FOIA request. Then, while this appeal was pending, in August 2018, Illinois legislators again amended FOIA, as well as the Higher Education Student Assistance Act, with language that seems clearly intended to preclude the type of disclosure that Timpone would like to obtain regarding the 2015 MAP recipients. The General Assembly amended section 7.5 of FOIA with language incorporating section 70 of the Higher Education Student Assistance Act and amended section 70 of the Higher Education Student Assistance Act so that it now reads:

> "(g) The personal identity and address of a scholarship, grant, or other financial assistance applicant or recipient under a non-discretionary program administered by the Commission, including, but not limited to, the Monetary Award Program under Section 35 of this Act, where eligibility data is obtained from the Free Application for Federal Student Aid authorized by 20 U.S.C. 1090 or is protected from disclosure under federal or State law or under rules and regulations implementing federal or State law, is information that is intended to remain private and shall be exempt from inspection and copying under the Freedom of Information Act." 110 ILCS 947/70(g) (West 2018).

¶ 18     Accordingly, our determinations today have limited application.

¶ 19     Although ISAC presents numerous theories for reversal, we need address only two of them. The first argument is based on FOIA section 7(1)(a), which exempts from public disclosure all "[i]nformation specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." 5 ILCS 140/7(1)(a) (West 2014). ISAC proposes that we read section 7(1)(a) along with the State regulations that implement the MAP program and protect the confidentiality of financial information that applicants must divulge about themselves and their parents or spouses. Section 2700.55 of ISAC's regulations specifies

that "personally identifiable information of an ISAC program applicant, participant or anyone named in any materials related to program participation, or personally identifiable information of an individual that ISAC accesses, receives or maintains in relation to its research or other activities, is considered confidential personal information." 23 Ill. Adm. Code 2700.55 (2014). Section 2700.55 further states, "The confidential information shall not be sold or used, shared or accessed for any purpose other than that which is directly related to the purpose for which the confidential information was provided to the participating entity." 23 Ill. Adm. Code 2700.55 (2014). ISAC's regulations also provide, "Applicants, spouses and the parents of applicants are required to submit financial information on the application that will be kept confidential, regarding income, asset value and non-taxable income." 23 Ill. Adm. Code 2735.30(b), amended at 37 Ill. Reg. 9528 (eff. July 1, 2013). The circuit court rejected this argument, reasoning that student names were not encompassed by the regulation's phrase "regarding income, asset value and non-taxable income." 23 Ill. Adm. Code 2735.30(b), amended at 37 Ill. Reg. 9528 (eff. July 1, 2013). We do not reach the same conclusion about the relevance of the regulations, however, in light of the income tables, which are available to the public in the 2015 Data Book maintained on ISAC's website, and the remarks on ISAC's website, which divulge the relatively modest income of 2015 MAP grant recipients and/or their spouses or parents.

¶ 20    As we indicated above, ISAC's 2015 Data Book specified that for Illinois fiscal year 2015, the mean income of parents of all MAP eligible dependent students was $30,652 and the mean income of all MAP eligible independent students was $16,268. Ill. Student Assistance Comm'n, Average Income by Dependency Status, http://www.isac.org/e-library/research-policy-analysis/data-book/documents/2015-data-book/2015DataBookTable2.3d.pdf (last visited Dec. 3, 2019) [https://perma.cc/EKT6-MWFX]. The 2015 Data Book provided additional figures, by type of school, specifying that the mean income of dependent and independent MAP recipients at Illinois public four-year institutions was $33,098 and $14,610, respectively; it was $41,151 and $20,561 respectively at this State's private nonprofit institutions, $23,540 and $15,343 at Illinois public two-year institutions, $39,595 and $23,763 at Illinois hospital schools, and $30,841 and $19,278 at Illinois proprietary schools. The 2015 Data Book also specified the income figures of dependent and independent MAP recipients at each individual school, stating, for instance, that at the four-year public Chicago State University, the mean family income of dependent MAP recipients was $20,682 and the mean income of independent MAP recipients was $12,575; $32,533 and $15,943 were the income figures for MAP recipients at the four-year public Eastern Illinois University; and $26,653 and $19,482 were the income figures for MAP recipients at the four year public Governors State University. ISAC has published and maintained this type of data every year on its website and currently provides annual data books for fiscal years 2004 through 2018. See *Data Book*, Ill. Student Assistance Comm'n, https://www.isac.org/e-library/research-policy-analysis/data-book/ (last visited Dec. 3, 2019) [https://perma.cc/J996-MSWU] (indicating ISAC's Research, Planning, and Policy Analysis Division completes annual data books). Thus, the public has access to detailed information about the mean income of 2015's MAP recipient households.

¶ 21    Moreover, one need not delve into the tables of statistics in the 2015 Data Book in order to find out the approximate income of each MAP recipient. ISAC's website includes general remarks that inform the public that "[m]ore than half (54%) of MAP recipients are so low-income that the federal government doesn't consider them able to contribute *any* resources to

pay for college." (Emphasis in original.) *MAP Facts*, Ill. Student Assistance Comm'n, https://www.isac.org/home/map-matters/map-facts.html (last visited Dec. 3, 2019) [https://perma.cc/V29Y-YG2F]. Also, "93% of MAP awards go to students who are Pell-[grant] eligible," meaning that most MAP recipients came from households earning less than $20,000 per year. Ill. Student Assistance Comm'n, Basic ISAC Program Data 2 (Feb. 2016), https://www.isac.org/e-library/research-policy-analysis/program-data/documents/2015_Basic_Program_Data.pdf [https://perma.cc/M3M3-96UM]; *Federal Grants*, Scholarships.com, https://www.scholarships.com/financial-aid/grants/federal-grants/ (last visited Dec. 3, 2019) [https://perma.cc/WWB9-2G6J] ("most [of the 2015] Pell grant money [went] to students with a total family income below $20,000").

¶ 22   These published figures and remarks are put into perspective by the 2015 income figures that were compiled for the United States as a whole and for Illinois in particular. In contrast to the 2015 MAP median income figures of $30,652 and $16,268, according to the United States Census Bureau, the nation's median household income in 2015 was $57,652 and Illinois's median household income in 2015 was $61,229. *Quick Facts*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/IL,US/INC110217 (last visited Dec. 3, 2019) [https://perma.cc/Z4B6-GVPZ]. Thus, most of the 2015 MAP recipient households earned income that was well below the income of other residents of the United States and Illinois. In fact, MAP recipient median annual income is near the threshold for poverty in this country. The federal Census Bureau indicates that in 2015, the poverty threshold for a couple with no children was $15,391, the poverty threshold for a family of four was $24,257, and the poverty threshold for a family of six was $32,542. U.S. Census Bureau, Income and Poverty in the United States: 2015, 43 (Sept. 2016) https://www.census.gov/content/dam/Census/library/publications/2016/demo/p60-256.pdf [https://perma.cc/E7PR-XVEZ]. Households earning less than the poverty threshold reported to the Census Bureau a median net worth of just $2000. U.S. Census Bureau, Median Value of Assets for Households, by Type of Assets Owned and Selected Characteristics: 2015 (June 7, 2019) https://www.census.gov/data/tables/2015/demo/wealth/wealth-asset-ownership.html [https://perma.cc/3QGA-KFCG].

¶ 23   In light of the mean income disclosures and remarks that are already available on ISAC's website, the further revelation of any 2015 MAP recipient's name would inform Timpone of the approximate income earned by that student and/or by that student's spouse or parents. However, FOIA section 7(1)(a) provides an exemption for all information that is specifically prohibited from disclosure by State regulations. The State regulations put at issue here specify that "personally identifiable information *** is considered confidential personal information" and "confidential information shall not be *** shared *** for any purpose other than that which is directly related to the purpose for which the confidential information was provided to the participating entity." 23 Ill. Adm. Code 2700.55 (2014). The State regulations also specify that the income of the MAP applicant, spouse, and parents "will be kept confidential." 23 Ill. Adm. Code 2735.30(b), amended at 37 Ill. Reg. 9528 (eff. July 1, 2013). Read together, Illinois law and regulations prevent ISAC from adding individual student names to the student income information, which ISAC has already shared with or disclosed to the public through the agency's website. Once Timpone had individual student names as well as the income characteristics which were already published for each learning institution, Timpone would have the students' "personally identifiable information" and "confidential information." Individual student names are thus exempted by section 7(1)(a) from Timpone's FOIA request.

¶ 24    There is an additional reason for denying Timpone's FOIA request. The second argument we consider dispositive of ISAC's appeal is based on FOIA's section 7(1)(b), which exempts from public inspection and copying the disclosure of "Private information, unless disclosure is required by another provision of this Act, a State or federal law or a court order." 5 ILCS 140/7(1)(b) (West 2014). FOIA defines "Private information" as follows:

> " 'Private information' means unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses. Private information also includes home address and personal license plates, except as otherwise provided by law or when compiled without possibility of attribution to any person." 5 ILCS 140/2(c-5) (West 2014).

¶ 25    The circuit court rejected ISAC's reliance on this language, reasoning that the statute did not expressly exempt names of students receiving financial aid and instead provided a list of "unique identifiers," none of which were names. We, however, do not read the statute to include only "unique identifiers" because only the statute's first few examples of "a person's social security number, driver's license number, employee identification number, [and] biometric identifiers,"[1] fit into the category of numbers or other information that identifies a particular person. 5 ILCS 140/2(c-5) (West 2014). The statute's concluding examples of "personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses" are not "identifiers" *per se* but are instead documents, numbers, or other personal details that are commonly regarded as private information.

¶ 26    The most relevant of the statute's examples is "personal financial information," and we point out that personal financial information is "universally presumed to be private, not public." *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003).

¶ 27    An illustrative case involved the financial disclosures of a former FBI agent, Connolly, who was convicted of racketeering, obstruction of justice, and murder due to his involvement in the 1980s with some of Boston's infamous organized crime figures. *In re Boston Herald*, 321 F.3d 174. Connolly's prosecution was the subject of "extensive media coverage and public interest," particularly in the city where he had worked for the FBI. *In re Boston Herald*, 321 F.3d at 176. As the various criminal charges progressed through the trial and appellate courts, Connolly ran out of money to pay his defense counsel and applied for federal assistance through the Criminal Justice Act of 1964 (Criminal Justice Act) (18 U.S.C. § 3006A (2000)) to pay some of his attorney fees and expenses. *In re Boston Herald*, 321 F.3d at 175.

¶ 28    Connolly documented his existing legal debts and also tendered some financial affidavits, was granted assistance, and on Connolly's motion, his comprehensive financial disclosures were placed under seal. *In re Boston Herald*, 321 F.3d at 175. Like ISAC's files, the court clerk's files were presumptively open to the public, but the court could in its discretion override that presumption in cases where "disclosure could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants." (Internal quotation marks omitted.) *In re Boston*

---

[1]Some examples of biometric identifiers are fingerprints, palm veins, face recognition, DNA, palm print, hand geometry, and iris recognition. *Biometrics*, Wikipedia, https://en.wikipedia.org/wiki/Biometrics (last visited Nov. 27, 2019) [https://perma.cc/2PQF-QAE7].

*Herald*, 321 F.3d at 179. The written order appointing Connolly's lawyer under the Criminal Justice Act always remained public and specified that although Connolly "possesses a number of substantial assets, the total of these assets is less than half of his current liabilities." (Internal quotation marks omitted.) *In re Boston Herald*, 321 F.3d at 176.

¶ 29 Shortly after Connolly's conviction in one of the criminal proceedings, the Boston Herald, which was one of the two major daily newspapers in the region, asked the court to unseal Connolly's financial information. *In re Boston Herald*, 321 F.3d at 175-76. The newspaper based its request on the first amendment and common law, but the magistrate, district court, and reviewing court rejected both arguments. *In re Boston Herald*, 321 F.3d at 176.

¶ 30 In its analysis, the appellate court disagreed with the newspaper's suggestion that the documents should be released because of a tradition of access to information about the expenditure of public funds. *In re Boston Herald*, 321 F.3d at 185. Historically, "Personal financial information, such as one's income or bank account balance, is universally presumed to be private, not public." *In re Boston Herald*, 321 F.3d at 190; see *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (there is a presumption of public access to documents filed with the court, but the court should "consider the degree to which the subject matter [of the documents] is traditionally considered private rather than public," and that "[f]inancial records of a wholly owned business *** and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public").

¶ 31 Instead, the court agreed with Connolly's analogy that in government benefits programs, the government adheres to a "strong tradition *** of confidentiality rather than disclosure." *In re Boston Herald*, 321 F.3d at 185 (federal act which establishes "safeguards to prevent public disclosure of information about Social Security recipients" (citing 42 U.S.C. § 302(a)(7) (2000))). The court noted that the disclosure of Connolly's private financial data would affect not only him, but also his family, and that it is only in *exceptional* instances that the public is given access to the private financial data of government aid applicants and their immediate families. *In re Boston Herald*, 321 F.3d at 185, 191 ("it [is] the exception, not the rule, to require applicants for benefits programs to [publicly] disclose private financial data" and "the invasiveness of the disclosure sought here is further intensified because the information pertains not only to Connolly, but also to his wife and children [who are innocent third parties]").

¶ 32 Accordingly, despite the source of the funds and the presumption of public access to government records, the appellate court affirmed the denial of any access to Connolly's personal financial information. *In re Boston Herald*, 321 F.3d at 191. Connolly's privacy interests outweighed the public's interest in the use of its funds. *In re Boston Herald*, 321 F.3d at 191.

¶ 33 Along these lines, we note that Illinois regulations regarding public assistance expressly require confidentiality with client information. State regulations provide: "For the protection of clients, any information about a client or case is confidential and shall be used only for purposes directly related to the administration of the assistance programs, except [when staff is cooperating with law enforcement and coordinating information with other benefit programs]." 89 Ill. Adm. Code 10.230 (2000).

¶ 34 Here, too, private information, specifically personal financial information, is protected from public inspection and copying.

¶ 35    We disagree with Timpone's contention that names, by themselves, are not private. Timpone relies on *Lieber*, which concerned a FOIA request to Southern Illinois University (SIU) in the early 1990s, when FOIA and privacy expectations were markedly different than they are now. See *Lieber*, 176 Ill. 2d 401. In *Lieber*, the Illinois Supreme Court addressed whether section 7(1)(b)'s then prohibition on releasing " '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy' " justified the denial of a FOIA request for the names and addresses of individuals who had been admitted to SIU but had not yet enrolled. *Lieber*, 176 Ill. 2d at 409-10 (quoting 5 ILCS 140/7(1)(b) (West 1994)). The FOIA request came from an apartment building owner who wanted to market his rental units. *Lieber*, 176 Ill. 2d at 404. In previous years, the school had distributed mailing labels containing student names and addresses, but the school stopped this practice when there was a decline in enrollment and occupancy of on-campus housing. *Lieber*, 176 Ill. 2d at 404. The court determined that the names and addresses were not exempt from public disclosure and that the FOIA request should have been granted. *Lieber*, 176 Ill. 2d at 414. *Lieber* involved statutory language that is no longer in effect; it was decided in an era when privacy expectations were different, and disclosing the names of all admitted students would not have revealed any distinguishing information about those individuals. We do not consider *Lieber* to have any relevance to the issue before us.

¶ 36    We find additional guidance in *Kendrick*, a case factually on point, in which the Alabama Supreme Court addressed a local newspaper's request in 2015 for the names of Alabama State University (ASU) student football players whose athletic financial aid had been either reduced or cancelled after the Fall 2014 semester. *Kendrick v. Advertiser Co.*, 213 So. 3d 573, 574 (Ala. 2016).

¶ 37    Each reduction or cancellation was documented on a form that included a student's name, address, school identification number; the ASU sport or sports in which the student participated; and the reason(s) the student's athletic financial aid was reduced or cancelled. *Kendrick*, 213 So. 3d at 575. Those reasons included:

> " '[r]endered him/herself ineligible for intercollegiate competition for any reason'; '[d]id not satisfy the institution's academic requirements for like scholarship or grant-in-aid'; '[f]raudulently misrepresented information'; '[e]ngaged in serious misconduct warranting substantial disciplinary penalty'; '[v]oluntarily withdrew from the team for personal reasons'; '[r]eceived any outside aid that exceeded the value of the cost of attendance or affected their respective sport's maximum award amounts/equivalences'; and '[o]ther.' " *Kendrick*, 213 So. 3d at 575 n.2.

The head coach seeking to reduce or cancel a student's athletic financial aid was instructed to attach to the form " 'any disciplinary form, transcripts, medical records, correspondence, etc.' " *Kendrick*, 213 So. 3d at 575.

¶ 38    When the school told the reporter in early 2015 that the financial aid forms he had requested would have to be so heavily redacted " 'that there would be *nothing* on them,' " the reporter said he would " 'take just the list of names of players whose scholarships have been revoked since December [2014].' " (Emphasis in original.) *Kendrick*, 213 So. 3d at 575. The school declined to disclose those names. Timpone's request for a list of certain student names is similar to the Alabama reporter's request for a list of certain student names.

¶ 39    The Alabama school, however, was an educational institution that received federal funds, and it was thus subject to federal laws that are not applicable to the State agency currently

- 11 -

before us. In correspondence, the reporter argued that he was entitled to the information due to language in Alabama's Open Records Act providing " '[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute.' " *Kendrick*, 213 So. 3d at 575 (quoting Ala. Code § 36-12-40 (1975)). The school countered that the federal statute commonly known as FERPA, the Family Educational Rights and Privacy Act of 1974 (20 U.S.C. § 1232g (2012)), as well as a federal regulation promulgated pursuant to FERPA (34 C.F.R. § 99 (2014)), prohibited the release of education records without the student's consent, and thus, the requested athletic financial aid information was exempt from the Alabama Open Records Act. *Kendrick*, 213 So. 3d at 575. In a subsequent *mandamus* action, the reporter argued that FERPA made an exception for the disclosure of " 'directory information,' "[2] and that directory information is defined to include a student's name and the sport or sports in which the student participates. *Kendrick*, 213 So. 3d at 575-76. The trial court then granted the reporter's request and required the school to release the information. *Kendrick*, 213 So. 3d at 576.

¶ 40 On appeal, however, the school argued that releasing the redacted financial aid forms would disclose more than mere directory information because it would disclose information about the students' financial aid. *Kendrick*, 213 So. 3d at 577. The Alabama Supreme Court agreed that each redacted financial aid form would inform the newspaper that the student's athletic financial aid has been reduced or cancelled, which was an improper disclosure. *Kendrick*, 213 So. 3d at 578. This case illustrates that the context of the information disclosure is significant. This case, rather than *Lieber*, 176 Ill. 2d 401, is on point, and it has helped frame our perspective on the facts and the parties' arguments.

¶ 41 Given the detailed personal income information of MAP applicants and recipients that has been disclosed and is maintained on ISAC's public website, we conclude that the further disclosure of the names of MAP grant recipients would invade the privacy of those individuals. Thus, the 2015 MAP recipient names are exempted from public disclosure by FOIA's section 7(1)(b). 5 ILCS 140/7(1)(b) (West 2014).

¶ 42 Because of these conclusions, we need not reach ISAC's additional arguments for reversal. Based on the reasoning above, we reverse the circuit court's summary judgment ruling in favor of Timpone. In addition, because Timpone did not prevail on his FOIA claim, we reverse the circuit court's award of his attorney fees and costs. See 5 ILCS 140/11(i) (West 2014).

¶ 43 Reversed.

---

[2]FERPA states:

"For the purposes of this section [of FERPA] the term 'directory information' relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student." 20 U.S.C. 1232g(5)(A) (2012).